1　MICHAEL J. SACKSTEDER (CSB No. 191605)
　　msacksteder@fenwick.com
2　FENWICK & WEST LLP
　　555 California Street, 12th Floor
3　San Francisco, CA  94104
　　Telephone:   415.875.2300
4　Facsimile:   415.281.1350

5
　　Attorneys for Defendant
6　INTUIT INC.

7

8　　　　　　　　UNITED STATES DISTRICT COURT

9　　　　　　　SOUTHERN DISTRICT OF CALIFORNIA

10　　　　　　　　　　SAN DIEGO DIVISION

11　Samesurf, Inc.,　　　　　　　　　) Case No.: 3:22-cv-00412-LL-KSC
　　　　　　　　　　　　　　　　　　)
12　　　　　　　Plaintiff,　　　　　　) **DEFENDANT INTUIT INC.'S**
　　　　　　　　　　　　　　　　　　) **MEMORANDUM OF POINTS**
13　　　　v.　　　　　　　　　　　　) **AND AUTHORITIES IN**
　　　　　　　　　　　　　　　　　　) **SUPPORT OF MOTION TO**
14　Intuit Inc.,　　　　　　　　　　) **DISMISS PURSUANT TO FED. R.**
　　　　　　　　　　　　　　　　　　) **CIV. P. 12(B)(6)**
15　　　　　　　Defendant.　　　　　　)
　　　　　　　　　　　　　　　　　　) Hearing Date: June 27, 2022
16　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　) **PER CHAMBERS RULES, NO**
17　　　　　　　　　　　　　　　　　) **ORAL ARGUMENT UNLESS**
　　　　　　　　　　　　　　　　　　) **SEPARATELY ORDERED BY**
18　　　　　　　　　　　　　　　　　) **THE COURT**
　　　　　　　　　　　　　　　　　　)
19　　　　　　　　　　　　　　　　　) Judge: Hon. Linda Lopez
　　　　　　　　　　　　　　　　　　) Courtroom: 2B
20　─────────────────────────────

21

22

23

24

25

26

27

28

FENWICK & WEST LLP

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 1

      A.    The Asserted Patents ..................................................................... 2

III.  ARGUMENT ............................................................................................. 5

      A.    Patent Eligibility Under 35 U.S.C. § 101 ...................................... 5

      B.    Abstract Idea .................................................................................. 6

            1.    The Focus of the Asserted Claims is Directed to the
                  Abstract Idea of Sending and Receiving Information for
                  Simultaneous Interactions ................................................... 7

            2.    The Asserted Claims Neither Provide a Solution to a
                  Technology-Specific Problem Nor Address such a
                  Problem. ............................................................................. 12

      C.    The Asserted Claims Do Not Have an Inventive Step ................. 16

      D.    The Dependent Claims Remain Directed to the Same Abstract
            Idea of Sending and Receiving Information for Simultaneous
            Interactions, and Do Not Add an Inventive Step ........................ 21

IV.   CONCLUSION ......................................................................................... 23

FENWICK & WEST LLP

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accenture Glob. Servs. GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ................................................................ 14

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ................................................................ 14

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) .......................................................... 13, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347, 573 U.S. 208 (2014) .............................................. *passim*

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ................................................................ 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 5

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ...................................................................... 6, 19, 23

*BSG Tech LLC v. BuySeasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) .................................................................. 7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) .................................................................. 15

*Content Aggregation Sols. LLC v. BLU Prods., Inc.*,
    No. 16-cv-00527-BEN-KSC,
    2016 WL 6995490 (S.D. Cal. Nov. 29, 2016) .................................4, 9, 10, 18

*Content Extraction & Transmission LLC v.
    Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014).................. 4, 20

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ................................................................ 14

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) .......................................................... 11, 22

*Data Scape Ltd. v. W. Digital Corp.*,
    816 F. App'x 461 (Fed. Cir. 2020) ............................................................ 20

*Elec. Power Grp. v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .................................................................. 7

1
2

## TABLE OF AUTHORITIES
### (continued)

Page(s)

3

*Evolutionary Intell., LLC v. Sprint Nextel Corp.*,
137 F. Supp. 3d 1157 (N.D. Cal. 2015),

4

*aff'd*, 677 F. App'x 679 (Fed. Cir. 2017) ......................................... 11

5

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ................................................. 5, 22

6

7

*In re Greenstein*,
778 F. App'x 935 (Fed. Cir. 2019) ............................................... 9, 13

8

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) .............................................. 6, 11, 18

9

10

*Innovation Scis., LLC v. Amazon.com, Inc.*,
778 F. App'x 859 (Fed. Cir. 2019) ............................................. 13, 22

11

12

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) .................................................... 18

13

*Intell. Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017) ..................................................... 9

14

15

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ............................................. 9, 10, 22

16

*Lendingtree, LLC v. Zillow, Inc.*,
656 F. App'x 991 (Fed. Cir. 2016) ................................................. 9

17

18

*Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*,
811 F.3d 1314 (Fed. Cir. 2016) .................................................. 7, 23

19

20

*NetSoc, LLC v. Quora, Inc.*,
No. 19-CV-06518-VC, 2020 WL 415919 (N.D. Cal. Jan. 27, 2020),

21

*aff'd*, 838 F. App'x 544 (Fed. Cir. 2020) ......................................... 13

22

*Planet Bingo, LLC v. VKGS LLC*,
576 F. App'x 1005 (Fed. Cir. 2014) ............................................... 17

23

24

*Pragmatus Telecom, LLC v. Genesys Telecomms. Lab'ys, Inc.*,
114 F. Supp. 192 (D. Del. 2015) .............................................. 7, 8, 22

25

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) .................................................... 19

26

27

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) ............... 5, 6, 13, 22

28

FENWICK & WEST LLP

1

## TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021) ....................13, 22

4

5

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) .........................................................................21

6

*Sungkyunkwan Univ. Rsch. Bus. Found. v. LMI Techs. (USA) Inc.*,
No. 16-CV-06966-VC, 2017 WL 1900737 (N.D. Cal. May 3, 2017) ..............14

7

8

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) .........................................................................21

9

*TriDim Innovations LLC v. Amazon.com, Inc.*,
207 F. Supp. 3d 1073 (N.D. Cal. 2016)..............................................................18

10

11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ..............................................................4, 14, 22

12

13

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed Cir. 2014) ..............................................................16, 19, 23

14

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019) .................................................................11, 22

15

16

*Williamson v. Citrix Online, LLC*,
212 F. Supp. 3d 887 (C.D. Cal. 2016),
*aff'd* 683 F. App'x 956 (Fed. Cir. 2017).........................................................9, 22

17

18

*Windy City Innovations, LLC v. Facebook, Inc.*,
411 F. Supp. 3d 886 (N.D. Cal. 2019),
*aff'd*, 835 F. App'x 610 (Fed. Cir. 2021) (*per curiam*)................................14, 15

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

STATUTES AND RULES

35 U.S.C. § 101 ................................................................................................*passim*

35 U.S.C. § 102 ........................................................................................................21

Federal Rule of Civil Procedure 12 ..........................................................................4

Federal Rule of Civil Procedure Rule 12(b)(6) .................................................. 1, 3

Federal Rule of Evidence 201(b) ............................................................................10

FENWICK & WEST LLP

## I.    INTRODUCTION

For generations, business professionals, educators, and students have worked collaboratively on the same materials, for example, by gathering around an overhead projector or document camera while taking turns making suggested revisions.  The claims of the three patents asserted in this suit do nothing more than implement this abstract method of organizing human activity, using only conventional, generic computers and networks developed by others.  Specifically, the claims purport to cover an interactive web browsing experience and the simultaneous sharing of information over the Internet.

Such abstract claims are routinely held not to be patent-eligible.  Indeed, courts have held that patents claiming interactive web browsing and simultaneous screen sharing—the purported technology at issue here—are invalid for failure to claim patentable subject matter.  And the Supreme Court and Federal Circuit hold that the mere use of computers, conventional devices, and the Internet as tools to carry out or assist human activity does not satisfy the requirement for patent-eligible subject matter under 35 U.S.C. § 101.  Accordingly, like the many patents covering methods of organizing human activity that came before them, the asserted patents are invalid under 35 U.S.C. § 101.

Defendant Intuit Inc. respectfully requests the Court to dismiss Plaintiff Samesurf, Inc.'s complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to allege infringement of a patentable claim.

## II.    FACTUAL BACKGROUND

Samesurf filed its complaint on March 29, 2022.  *See* Compl. (Dkt. 1). Samesurf alleges Intuit infringes claims 1-4, 6-8, 11-14, and 16 of U.S. Patent No. 9,483,448 (the "'448 patent"), claims 1-5, 7-14, and 16-17 of U.S. Patent No. 9,185,145 (the "'145 patent"), and claims 1-6, 10-12, and 14-16 of U.S. Patent No. 8,527,591 (the "'591 patent") (collectively, the "Asserted Patents") ('448 patent claims 1-4, 6-8, 11-14, and 16, '145 patent claims 1-5, 7-14, and 16-17, and '591

FENWICK & WEST LLP

patent claims 1-6, 10-12, and 14-16, are collectively referred to as the "Asserted Claims").  Compl. ¶ 49; *see id.* ¶¶ 113, 153, 189.  Samesurf accuses Intuit's "TurboTax Online, QuickBooks Online, TurboTax Live, QuickBooks Live, Smartlook, and other co-browse enabled Intuit products and/or online experiences," "as well as the underlying infrastructure supporting these products," of infringement. *Id.* ¶ 49; *see, e.g., id.* ¶¶ 81, 89.

### A.   The Asserted Patents

The '591 patent was filed on May 20, 2010, and issued on September 3, 2013. *See* Compl. Ex. C at 1.  The '145 patent is a continuation of and claims priority to the '591 patent, was filed on July 26, 2013, and issued on November 10, 2015.  *See* Compl. Ex. B at 1.  The '448 patent claims priority to U.S. Patent App. 12/783,735, has a priority date of May 20, 2010, was filed on August 19, 2015, and issued on November 1, 2016.  *See* Compl. Ex. A at 1.

The '591 and '145 patents are related family members and share a common specification.  The '448 patent has substantially the same specification as the '591 and '145 patents.  All three Asserted Patents are directed toward methods "for joining a synchronized browsing session administered by a synchronization server, comprising activating a hyperlink associated with the synchronized browsing session, sending a request to join the synchronized browsing session to the synchronization server in response to the activation of the hyperlink, and joining the synchronized browsing session."  '591 patent 2:54-60.  The foregoing is accomplished through the use of generically described components such as computers, servers, and the Internet.  *See, e.g., id.* at 10:6-9 ("Fig. **2**(a) shows host device **10**, synchronization server **13** and guest device **14** transmitting data communication to initialize a synchronized browsing session between host device **10** and guest device **14**."), 6:6-11 ("host device **10** may comprise a personal computer, mobile phone, Smartphone, IPAD®, or other type of electronic device with a visual user interface and a network connection such that a user may access and view a third

FENWICK & WEST LLP

party website such as one provided by website server **12** over internet **11**.").

Independent Claim 1 of the '591 patent recites as follows:

**1.** A method for a guest device performing a synchronized browsing session administered by a synchronization server, comprising:

> detecting an activation of a hyperlink associated with the synchronized browsing session by a guest device;

> sending a request by the guest device to join the synchronized browsing session to the synchronization server in response to the activation of the hyperlink;

> receiving from the synchronization server a notification that guest device has joined the synchronized browsing session;

> receiving data from the synchronization server, where the data relates to a website being accessed in real-time by a host device; and wherein the data comprises a URL of the website and cookie information associated with the website and the host device; and

> operating a browser by the guest device based on the data received from the synchronization server.

Independent claim 10 of the '591 patent similarly claims the foregoing in apparatus form. Claims 2-9 depend from claim 1, and claims 11-18 depend from claim 10. The dependent claims add trivial or conventional additional limitations to the independent claims, such as additional steps or usage of common Internet components. *See, e.g.,* '591 patent cl. 2 ("further comprising receiving an invitation"), cl. 3 ("wherein the invitation comprises the hyperlink associated with the synchronized browsing session.").

Independent claim 1 of the '591 patent is representative of all claims across the Asserted Patents.[1] All claims are very similar in scope and recite the same basic

---

[1] In *Alice*, the Supreme Court considered a representative method claim and, after

FENWICK & WEST LLP

1    steps: (1) sending a request by a first device to join a synchronized browsing session;

2    (2) receiving information at a second device about the website content accessed; and

3    (3) accessing the website content by the second device for synchronizing the session.

4    The Asserted Patents' dependent claims are also very similar in scope to one another.

5    *See, e.g.,* '145 patent cl. 2 ("said invitation comprises a hyperlink associated with

6    said synchronized browsing session."), cl. 3 ("wherein said invitation is received via

7    _____

8    finding the method claim ineligible, found the asserted system claims invalid as

9    "add[ing] nothing of substance to the underlying [] idea" without performing a claim-

10   by-claim analysis. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360

11   (2014). Following *Alice*, district courts and the Federal Circuit have done the

12   same. In *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, the

13   district court found 242 claims of four patents ineligible under Section 101 based on

14   its analysis of two representative claims, even where the parties had not agreed

15   beforehand on the set of representative claims. 776 F.3d 1343, 1348 (Fed. Cir.

16   2014). The Federal Circuit rejected the Patent Owner's contention that the district

17   court erred by failing to address each claim individually, finding that such an analysis

18   was "unnecessary." *Id.* The Federal Circuit found the claims of the patents, which,

19   like here, shared a common specification, all drawn to the same abstract idea, and

20   noted that the Patent Owner failed to identify any claim that was distinguishable from

21   the representative claims. *Id.* at 1347-48. Claims from one patent can be

22   representative of claims from related patents when analyzing patentable subject

23   matter under Section 101. *See, e.g., Two-Way Media Ltd. v. Comcast Cable

24   Commc'ns, LLC*, 874 F.3d 1329, 1333 (Fed. Cir. 2017) (explaining that related

25   patents with "substantially the same specification" are representative across all

26   claims of the patents, and conducting the subject matter analysis on the representative

27   claim for all patents). For completeness, dependent claims are addressed in Section

28   D, *infra*.

Fenwick & West LLP

1  a viable means of communication."); '448 patent cl. 2 ("receiving a notification
2  message indicative of the invitee device joining the synchronized browsing
3  session."), cl. 3 ("activating a hyperlink on a website to initialize the sending of the
4  request.").   Any differences between claims are trivial or conventional added
5  limitations that do not impact the analysis of patentable subject matter.  Moreover,
6  the Asserted Patents share substantially similar specifications, and are directed
7  toward the same subject matter.  Accordingly, all arguments made throughout this
8  brief similarly apply to all claims in the Asserted Patents.

9  **III.   ARGUMENT**

10  A complaint should be dismissed pursuant to Fed. R. Civ. P. 12 if it does not
11  include "enough facts" that, when taken as true, "state a claim to relief that is
12  plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
13  Challenges to patentable subject matter are appropriate in Rule 12 motions to dismiss.
14  *See, e.g., Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.,* No. 2021-1906, 2022
15  WL 794981, at *1 (Fed. Cir. Mar. 15, 2022); *Content Aggregation Sols. LLC v. BLU*
16  *Prods., Inc.,* No. 16-cv-00527-BEN-KSC, 2016 WL 6995490, at *11 (S.D. Cal. Nov.
17  29, 2016).

18  **A.   Patent Eligibility Under 35 U.S.C. § 101**

19  Courts apply a two-step analysis to evaluate patent eligibility under Section
20  101.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  First, the
21  Court "determine[s] whether the claims at issue are directed to a patent-ineligible
22  concept," such as an abstract idea.  *Id.* at 218.  Courts consider "whether the claims
23  focus on 'the specific asserted improvement in computer capabilities . . . or, instead,
24  on a process that qualifies as an "abstract idea" for which computers are invoked
25  merely as a tool'" to perform an abstract idea.  *Finjan, Inc. v. Blue Coat Sys., Inc.*,
26  879 F.3d 1299, 1303 (Fed. Cir. 2018) (citations omitted).  One example is a "method
27  for organizing human activity."  *See Repifi*, 2022 WL 794981, at *2.

28  Second, if the Court finds the claims are directed to an abstract idea, it then

should hold the claims ineligible unless it finds an additional "inventive concept"—beyond the abstract idea—in the claims. *Alice*, 573 U.S. at 217–18. The Court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (citations omitted). It is insufficient to implement an abstract idea using well-known computer components or functions, limit the idea to a particular technological environment, or add other token steps. *Alice*, 573 U.S. at 221-26; *see also Bilski v. Kappos,* 561 U.S. 593, 602, 610-12 (2010).

## B.   Abstract Idea

The Asserted Patents claim an abstract idea directed toward organizing human activity. *Cf. Repifi*, 2022 WL 794981, at *2. When distilled to their primary elements, the Asserted Patents claim steps to send and receive information for simultaneous interaction. These are the very activities that make humans human. Courts routinely find these types of claims to be non-patentable abstract ideas because they have long been the subject of organized human activity. Humans have simultaneously interacted without electronic devices since the dawn of humanity. Even before we could speak, we could successfully interact with one another just by pointing.

The Asserted Claims' use of computers, other devices, and the Internet fail to convert them to patentable claims as a matter of law. The claims' use of devices to facilitate a "synchronized browsing session" do not save them, because they are merely generic devices that permit the same simultaneous interaction humans have engaged in since the dawn of man. And because the Asserted Claims are directed to organized human activity and interaction, the language of the claims themselves do not provide a solution to a technology-specific problem. In fact, the Federal Circuit has held that the Asserted Patents' alleged improvements to operability and security are still nonetheless abstract. Regardless, the text of the Asserted Claims does not

describe how to achieve these alleged improvements, but instead uses result-focused, functional objectives and conventional components. Accordingly, the Asserted Claims are directed to an abstract idea.

### 1. The Focus of the Asserted Claims is Directed to the Abstract Idea of Sending and Receiving Information for Simultaneous Interactions

To assess whether the Asserted Claims are directed to an abstract idea, the court first examines the "focus of the claims." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (citation omitted); *see also Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) ("[W]e have described the first-stage inquiry as looking at the 'focus' of the claims, their 'character as a whole.'" (citations omitted)). Here, the claim language makes clear that sending and receiving information for simultaneous interactions is the focus of the Asserted Claims.[2] This

---

[2] *See, e.g.,* '591 patent cl. 1 ("sending a request by the guest device to join the synchronized browsing session … receiving from the synchronization server a notification that guest device has joined the synchronized browsing session … a website being accessed in real-time by a host device…"); '145 patent cl. 1 ("receiving from the synchronization server a session invitation … activating the session invitation to send a request to join said synchronized browsing session … receiving web browsing interaction data … associated with: a website …, and the host device that has initiated the session invitation…"); '448 patent at cl. 1 ("sending a request to establish the synchronized browsing session … receiving a confirmation message … sending an invitation to an invitee device to join the synchronized browsing session … sending a request for webpage content to a website … receiving, responsive to sending the request for webpage content … the requested webpage content from the website.").

The dependent claims similarly focus on the same abstract idea, and add only further steps or conventional components to carry out the abstract idea. *See, e.g.,*

FENWICK & WEST LLP

is an abstract idea. Courts have routinely invalidated patents directed to such organized human activity, finding they fail the first step of the *Alice* test.

In *Pragmatus Telecom, LLC v. Genesys Telecomms. Lab'ys, Inc.,* the court analyzed U.S. Patent No. 8,438,314. 114 F. Supp. 3d 192, 196 (D. Del. 2015). U.S. Patent No. 8,438,314 disclosed and was directed to collaborative screen sharing. *See* U.S. Pat. No. 8,438,314[3] at abstract ("[T]he connection between the customer with the question and the agent with the answer is done quickly and efficiently with **both parties sharing screens** of common information.") (emphasis added), 10:56-59 ("Screens appearing on the agents computer appear on the customer's computer, as what the customer sees is an exact duplicate of what the agent sees."), 10:64-66 ("The above combining of ACD, SVD and WWW building blocks allows **collaborative screen sharing** between customers and ACD agents." (emphasis added)), cl. 1 (claiming a server and call center to "forward" and "receive data," "a remote help option," and "a contact channel" through an IP address to connect the customer and call center), cl. 4 ("wherein the established communication between the call centre and the user of the customer terminal **is performed in real-time**") (emphasis added).

The court held the patent was directed to "the abstract idea of communication between a customer and a business using a call center," and that the claims only "automated and obfuscated" the communication "along the way using certain computer, telephonic and network services." *See Pragmatus Telecom*, 114 F. Supp. 3d at 200. The court further stated that even though "this invention might be faster,

_____

'591 patent cl. 2 ("further comprising receiving an invitation"); '145 patent at cl. 2 ("wherein said invitation comprises a hyperlink"); '448 patent at cl. 2 ("further comprising receiving a notification message."); *see also infra* Section D.

[3] https://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO1&Sect2=HITOFF&d=PALL&p=1&u=%2Fnetahtml%2FPTO%2Fsrchnum.htm&r=1&f=G&l=50&s1=8,438,314.PN.&OS=PN/8,438,314&RS=PN/8,438,314 (last visited May 20, 2022).

FENWICK & WEST LLP

1    automated, and more streamlined using web pages," "the idea at its core is connecting
2    customers to call centers."  *Id.*

3        The court in *Williamson v. Citrix Online, LLC* held similar simultaneous screen
4    sharing claims to be abstract.  The patents there were method claims comprising
5    "(1) the creation of a 'graphical display representative of a classroom,' . . and (2) the
6    creation of windows for displaying data streams on two different computer systems
7    that are 'displayed simultaneously.'"  212 F. Supp. 3d 887, 897 (C.D. Cal. 2016).
8    The court held the claims were directed to an abstract idea even though it "create[s]
9    a virtual environment that permits multiple users to ***view*** content and ***interact***
10   ***simultaneously***."  *Id.* (emphasis added).  The Federal Circuit agreed.  683 F. App'x
11   956 (Fed. Cir. 2017) (affirmed *per curiam* without opinion).

12       The Federal Circuit routinely finds claims that send, receive, and display
13   information and data are directed toward abstract ideas.  *See, e.g., In re Greenstein*,
14   778 F. App'x 935, 936-37 (Fed. Cir. 2019) (sending and receiving requests using
15   software, a computer, and the Internet); *Intell. Ventures I LLC v. Erie Indem. Co.*,
16   850 F.3d 1315, 1330-31 (Fed. Cir. 2017) (a device pointing to remote data sources is
17   directed to the abstract idea of remotely accessing user specific information);
18   *Lendingtree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 993, 996-97 (Fed. Cir. 2016)
19   (receiving, storing, and displaying documents in a website to coordinate loans);
20   *Intell. Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1314 (Fed. Cir. 2016)
21   (receiving, processing, and outputting data *via* email is an abstract idea, because "it
22   was [a] long-prevalent practice for people [to] receiv[e] paper mail").

23       The Southern District of California has also invalidated claims that are web-
24   based information exchanges.  In *Content Aggregation Sols. LLC v. BLU Prods., Inc.,*
25   the court analyzed claims directed to the sending and receiving of information to and
26   from an "*internet site*."  No. 16-cv-00527-BEN-KSC, 2016 WL 6995490, at *3 (S.D.
27   Cal. Nov. 29, 2016) (emphasis added).  The Court found the claim was directed to
28   the abstract idea of "retrieving and transmitting data" and "collecting, analyzing, and

FENWICK & WEST LLP

1   presenting information." *See id.* at *5.

2       Nearly identical to the cases above, the Asserted Claims are directed toward

3   sending and receiving information and data for simultaneous interactions.  This is a

4   conventional practice that has long been the subject of organized human activity in

5   the pre-Internet world.  Indeed, people were sending letters to communicate and

6   collaboratively work on a task with each other ever since humans could write.[4]  *Cf.*

7   *Symantec Corp.,* 838 F.3d at 1313.  Even prior to writing, humans could issue a verbal

8   invitation to collaborate on a task.

9       Simultaneously collaborating on a work, document, or page shown on a single

10  screen also is not new.  It is akin to simultaneously viewing and notating a document

11  shown on an overhead projector, which existed long before the Internet.  Moreover,

12  Samesurf admits its inventions are limited to the organized human activity of

13  collaborative visual interaction.  *See* Compl. ⁋ 35 ("K. David Pirnazar, a co-founder

14  and CEO of Samesurf, invented and established a new standard for *visual*

15  *communication* that is highly efficient and one that protects sensitive information

16  during shared browsing sessions.") (emphasis added).  Indeed, visual communication

17  and collaboration is the oldest form of human interaction.  Before formal language

18  existed, humans could merely point out what they needed to convey and collaborate

19  on.  For example, ancient human hunters hiding on opposite sides of a ravine could

20  use hand signals to communicate how to simultaneously catch their prey.  This

21  concept is no different than the visual interaction in the Asserted Claims.  Thus, the

22  Asserted Patents' claims are directed to an age-old, abstract idea of organized human

23  activity.

_____

24

25  [4] The Court may properly draw on its knowledge of well-known practices that long

26  predate the patents. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact

27  that is not subject to reasonable dispute because it: (1) is generally known within the

28  trial court's territorial jurisdiction").

Further, "merely tak[ing] these age-old ideas and add[ing] a computer . . . is insufficient to confer patent eligibility."  *Evolutionary Intell., LLC v. Sprint Nextel Corp.*, 137 F. Supp. 3d 1157, 1167 (N.D. Cal. 2015), *aff'd*, 677 F. App'x 679 (Fed. Cir. 2017); *see also In re TLI Commc'ns*, 823 F.3d at 613 ("[Limiting] the abstract idea to a particular environment—a mobile telephone system—[] does not make the claims any less abstract.").  And the "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *see Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (holding that "automation" of "pen and paper methodologies" is a "quintessential 'do it on a computer' patent" and does not make an idea less abstract under *Alice* Step 1 (citation omitted)).

The Asserted Claims' requirement that the method be "administered by a synchronization server" and other electronic devices fails to rescue the claims from being abstract.  These are just tools to automate and carry out the claimed abstract idea.  The synchronization server is a generic device facilitating the synchronized browsing session, which is simultaneous interaction over the Internet. *See, e.g.,* '591 patent 2:54-60 ("for joining a synchronized browsing session administered by a synchronization server, comprising activating a hyperlink associated with the synchronized browsing session, sending a request to join the synchronized browsing session to the synchronization server in response to the activation of the hyperlink, and joining the synchronized browsing session."), 5:19-22 ("In a synchronized browsing session, two or more people may read the same article, watch the same video, or shop for the same item automatically, without the hassle of coordinating user input."), 6:12-15 ("Guest devices 14 and 15 are components of the present invention that may join a synchronized browsing session to view internet browsing conducted by host device 10 via relay communication over synchronization server 13."), 7:8-10 ("a device in a synchronized browsing session may possess leading,

FENWICK & WEST LLP

following, or both leading and following characteristics."). Thus, the Asserted Claims merely take the above well-known and abstract concepts of organized human interaction and apply them to computers and the Internet to carry out the claimed exchange of information. Accordingly, Samesurf cannot escape the fact that it has claimed an abstract idea.

### 2. The Asserted Claims Neither Provide a Solution to a Technology-Specific Problem Nor Address such a Problem.

Samesurf cannot contend the Asserted Claims solved a technological problem. The alleged technological problem was that "there [was] no *effective, fully interactive* modality that enable[d] a group of users to view and interact with internet content and media simultaneously with others on different computers or other connected devices with all of those users empowered to interact with that content in real-time on a simultaneous basis," because the prior methods for real-time interaction required "large files or packets and require[d] high levels of bandwidth and computer processing power." '591 patent at 2:7-12, 25:27 (emphasis added). Samesurf also alleges its co-browsing technology made

> enhancements to multi-way, simultaneous interactivity, sensitive data security, computing resource and bandwidth utilization level efficiencies, computer and network security, the ability for multiple users to simultaneously view and listen to rich media content without latency or choppiness, and scalability to levels that were not possible with prior technology.

Compl. ¶ 63; *see also id.* ¶¶ 61-62.

Even though the above-alleged improvement to reduce required bandwidth and increase real-time operability may appear to be limited only to the Internet or a technology-specific problem, it is nonetheless still abstract. The Federal Circuit has held that "[t]he claimed use of the Internet and generic computer functionality to receive, manipulate, and transmit data serves to [only] 'limit[] the field of use of the

abstract idea to a particular existing technological environment,' but it 'does not render the claims any less abstract.'" *In re Greenstein*, 778 F. App'x at938 (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016)).

Moreover, the Federal Circuit has specifically held that the Asserted Patents' alleged efficiency improvements are abstract, because "automation of" a "conventional human process to make it more efficient is itself an abstract idea." *Repifi*, 2022 WL 794981, at *2-3 (finding claims directed to "improved visitor documentation compliance, obviating the need for unreliable hardware" and "improvements to computer operation" "does not save claim 1 from targeting an abstract concept" (citations omitted)).  In fact, the Federal Circuit has held claims directed to improved bandwidth are abstract.  In *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, the Federal Circuit rejected plaintiff's allegations that the patent "improve[d] use of bandwidth and device compatibility," and stated that "[t]he concept of encoding or decoding image data is abstract, even if [it is] for the purpose of transmitting files to devices with less memory or bandwidth or by transcoding data into multiple formats."  No. 2020-2320, 2021 WL 2944838, at *3 (Fed. Cir. July 14, 2021).

Samesurf and the Asserted Patents seek to improve the bandwidth functionality of the claimed communication exchange by adding devices that simply automate the process.  *See, e.g.,* '591 patent at 2:7-12, 25:27, cl. 1("synchronization server"); Compl. ¶¶ 61-63.  Just like the claims in *Sensormatic*, the Asserted Patents' alleged bandwidth improvements are abstract, regardless of the alleged improvements they provide.

Improved security over the Internet through the use of a server also is an abstract idea.  "The fact that communication is 'switched' from a website hosted on one server to a website hosted on another server *with better security* does not mean the invention is directed to 'a specific improvement in the capabilities of computing devices.'" *Innovation Scis., LLC v. Amazon.com, Inc.,* 778 F. App'x 859, 863 (Fed.

Cir. 2019) (quoting *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018)) (finding the claims were "directed to the abstract idea of securely processing a credit card transaction with a payment server").  To the extent the Asserted Patents are directed to improved security of the communication process, they nonetheless remain an abstract idea as a matter of law.

The Asserted Claims themselves also fail to address the problem they sought to fix.  Indeed, the Asserted Claims recite no detailed technical solution whatsoever. To do so, the claims' text must "sufficiently describe how to achieve [the solution] in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  Nor can claims merely recite "result-focused functional . . . language," because such functional language, without "any limiting detail that confines the claim to a particular solution to an identified problem," cannot make a claim non-abstract at *Alice* step one.  *See Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269-70 (Fed. Cir. 2016).  Stated otherwise, claims that merely recite "the technological context of the invention and its end goal," but not "the how that's nominally the subject of the claimed invention" is improper. *Sungkyunkwan Univ. Rsch. Bus. Found. v. LMI Techs. (USA) Inc.*, No. 16-CV-06966-VC, 2017 WL 1900737, at *1-2 (N.D. Cal. May 3, 2017); *see, e.g., NetSoc, LLC v. Quora, Inc.*, No. 19-CV-06518-VC, 2020 WL 415919, at *2–3 (N.D. Cal. Jan. 27, 2020) (finding "the claims [did] not describe any improvements to the technology itself, and "reciting that the abstract idea will be implemented using the conventional components and functions generic to networks is not enough" (alterations and citations omitted)), *aff'd*, 838 F. App'x 544 (Fed. Cir. 2020); *Windy City Innovations, LLC v. Facebook, Inc.*, 411 F. Supp. 3d 886, 896 (N.D. Cal. 2019) (collecting cases), *aff'd*, 835 F. App'x 610 (Fed. Cir. 2021) (*per curiam*).  Limitations requiring "converting," "routing," "controlling," "monitoring," and "accumulating" information are directed to an abstract idea when they do "not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at

FENWICK & WEST LLP

1337.

Here, the Asserted Claims make no mention for *how* to reduce bandwidth and improve security. They merely recite that the synchronization server sends and receives requests to set up the synchronized browsing session, and that the browsing session is run on the guest device. *See, e.g.,* '591 patent cl. 1.

Instead, the Asserted Claims recite result-focused, functional objectives of generic components without offering any specific mechanisms or technical solutions with which to meet those objectives. For example, claim 1 of the '591 patent recites a myriad of present participles and gerunds similar to those identified in *Two Way Media*, and other adverbs, that indicate the claims are directed to an abstract idea: a guest device "*performing* a synchronized browsing session *administered by* a synchronization server," "*detecting* an *activation* of a hyperlink," "*sending* a request by the guest device *to join* the synchronized browsing session to the synchronization server," "*receiving* from the synchronization server a notification," "*receiving* data from the synchronization server," and "*operating* a browser by the guest device." The claims do not explain *how* the above generic functions are performed or allegedly solve the specified problems, and are thus directed to an unpatentable abstract idea.

Reference to the specification cannot save the Asserted Claims from being abstract, because "[t]he § 101 inquiry must focus on the language of the [a]sserted [c]laims themselves, and the specification cannot be used to import details . . . if those details are not claimed." *ChargePoint, Inc. v. SemaCo*nnect*, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (citation omitted). Additionally, "[w]here 'the claims themselves only contain generalized software components arranged to implement an abstract concept on a computer' without any additional features or limits, 'the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method.'" *Windy City*, 411 F. Supp. 3d at 897 (quoting *Accenture Glob. Servs. GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013)).

The Asserted Claims merely recite generalized software components and require only three hardware components: a guest device; a host device, and a synchronization server. These elements do not provide the specificity required to transform the claims into patentable subject matter. And, even if Samesurf could rely on the Asserted Patents' specifications, the specifications merely generalize the same sending and receiving steps that the guest device, host device, and synchronization server (and its components) must take to set up the synchronized browsing session. *See, e.g.,* '448 patent at 9:20-10:2; 10:27-12:46, 16:5-20:2. The Asserted Claims, even when read in view of the specification, remain an abstract idea.

As written, the Asserted Claims do not provide technology specific solutions, nor address the problem. Thus, the claims are directed to an abstract idea.

## C.   The Asserted Claims Do Not Have an Inventive Step

The Asserted Claims fail to provide any inventive step that could transform the claims from a mere abstract idea into patentable subject matter. Where, as here, a claim is directed to an abstract idea, the court must then "determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (citation omitted). "The transformation of an abstract idea into patent-eligible subject matter 'requires more than simply stating the abstract idea while adding the words apply it.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed Cir. 2014) (alterations omitted) (quoting *Alice*, 573 U.S. at 221). Implementing the abstract idea on the Internet "is not sufficient to save otherwise abstract claims from ineligibility under § 101." *Ultramercial*, 772 F.3d at 716. Non-inventive elements include those that are "well-understood, routine, conventional," and those implemented on a "generic" computer. *Alice*, 573 U.S. at 225; *Ultramercial*, 772 F.3d at 714-15.

Here, the method claims only recite well-understood, routine, and conventional activities that are carried out on generic equipment, such as computers, servers, processors, and the Internet, all of which are used according to their

FENWICK & WEST LLP

conventional, routine functions.  The apparatus claims are similarly directed to a server or processor that coordinates the sending and receiving of electronic data, using the same conventional and routine tasks, and generic computer and Internet components, as the method claims.  *Cf. Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014) ("The system claims recite the same basic process as the method claims, and the dependent claims recite only slight variations of the independent claims" and therefore they are properly analyzed together.).

The synchronization server or processor in the Asserted Claims is not special in any way, nor does it differ from standard servers or processers:

> FIG. 1(e) illustrates a block diagram of the components of an exemplary synchronization server. FIG. 1(e) illustrates synchronization server 13, comprising processor 28, network interface 29, session identification database 30, and affiliate database 31. Synchronization server 13 is designed to establish and facilitate a synchronized browsing session between host device 10 and guest device 14. Processor 28 is a component of synchronization server 13 that may utilize network interface 29, session identification database 30 and affiliate database 31 in order to establish and facilitate a synchronized browsing session between host device 10 and guest device 14.

'591 patent at 9:20-31.  All of the foregoing components and steps for data exchange between these components were in existence long before the Asserted Patents.

The guest and host devices also are not special in any way because they are "a personal computer, mobile phone, Smartphone, IPAD®, or other type of electronic device with a visual user interface and a network connection such that a user may access and view a third party website such as one provided by website server **12** over internet **11**." *See* '591 patent at 6:3-21.

The above are generic computing components performing their ordinary functions, and thus cannot supply an inventive concept. *Cf. Mortgage Grader, Inc.*

*v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) ("[T]he claims 'add' only generic computer components such as an 'interface,' 'network,' and 'database.' These generic computer components do not satisfy the inventive concept requirement."); *Content Aggregation Sols.*, 2016 WL 6995490, at *5 ("Here, the claims simply implement the abstract idea of retrieving and transmitting information on the Internet via a generic device."). And although the Asserted Claims recite "synchronization server" and "synchronized browsing session," "[t]he mere fact that the inventor applied coined labels to conventional structures does not make the underlying concept inventive." *See Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). As the Federal Circuit noted, *Alice* itself involved the Supreme Court's finding patent-ineligibility "despite the recitation of technical-sounding names such as 'shadow credit record[s]' and 'shadow debit record[s].'" *Id.*

The Asserted Claims are result-focused, functionally claimed generic components that do not add any inventive step. "[F]unctional descriptions devoid of technical explanation as to how to implement the invention" provide no inventive concept. *In re TLI Commc'ns*, 823 F.3d at 615; *see TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1080 (N.D. Cal. 2016) ("[Claim] elements that are defined only in terms of their functionalities, whether considered separately or as an ordered combination, fall short of constituting an inventive concept."); *cf. Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (finding no inventive concept where the "claim simply recites the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea").

Other than the claimed generic physical hardware devices and common Internet usage techniques, the Asserted Claims recite mere functional language. *See, e.g.,* '591 patent cl. 1 ("detecting an activation of a hyperlink," "sending a request …

FENWICK & WEST LLP

to join the synchronized browsing session … in response to the activation of the hyperlink," "receiving … a notification that guest device has joined the synchronized browsing session," "receiving data" "and operating a browser … based on the data received…."). The Asserted Claims lack any recitation for *how* to perform these functions, let alone in an inventive way, and thus lack an inventive step.

To the extent the Asserted Claims require a specific order or combination of claim elements, they do not "'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (citation omitted). The Asserted Claims merely require the physical components to send and receive information to initiate a synchronized browsing experience. Logically, initiating the browsing experience necessitates a particular order of steps—because a user cannot join a browsing session unless and until they are invited to do so. Thus, the very nature of the claims requires their steps to be "ordered in a conventional manner," and to proceed just as humans exchanging information would: first, receive the information to join the session (*e.g.,* an invitation to have a conversation about a document); second, accept the information and notify the sender (*e.g.,* accepting and responding to the invitation); and then finally join the session (*e.g.,* engaging in the conversation and jointly reviewing the document). And to the extent these elements appear to combine multiple abstract ideas, such as exchanging information plus the simultaneous interaction, that also fails *Alice* step two because adding one abstract idea to another abstract idea does not render the claim non-abstract or non-inventive. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

The remainder of the claims also fail to create an inventive step, because adding mere "token postsolution components" or "insignificant postsolution activity" to the abstract idea are not sufficient. *See Bilski*, 561 U.S. at 611-12 (citations omitted); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016). Such limitations do not change the core "concept embodied by the majority of the limitations." *Ultramercial*, 772 F.3d at 715. For example, the Asserted Claims recite

wherein clauses that either have no bearing on the function and result of the abstract claims, or require certain elements to occur after the abstract exchange of information has occurred.  *See, e.g.,* '591 patent at cl. 1 ("wherein the data comprises a URL of the website and cookie information associated with the website and the host device"); *see also, e.g.,* '145 patent cl. 1 ("wherein said web browsing interaction data is associated with: a website server that is independent of the synchronization server"); '448 patent cl. 1 ("wherein the information related to the shared web browsing interaction is to be processed by a browser of the invitee device and enables the invitee device to generate a request to retrieve a substantially the same webpage content as the request for the webpage content from the host device").  These elements are post solution types of activities that do not change the Asserted Claims' abstract idea of exchanging information into something more.

Samesurf's allegations in the Complaint cannot save the Asserted Claims from being unpatentable.  *See Data Scape Ltd. v. W. Digital Corp.*, 816 F. App'x 461, 462-63 (Fed. Cir. 2020) (finding claims relating to media transfer to be abstract and invalid under Section 101, despite assertion that the patents made transfer processes less "cumbersome"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known **to the industry**.'" (emphasis added) (quoting *Alice*, 573 U.S. at 225)).  Although Samesurf alleges that its co-browsing technology "is a vast improvement over existing technologies" that had performance and security advantages over other products then currently on the market (*see* Compl. ¶¶ 58, 60-62), such alleged improvements do not constitute inventive steps, but rather overcome the *market* challenges Samesurf set out to correct by using only generic computers and Internet components that perform their ordinary functions.  *See, e.g.,* '591 patent at 2:7-12 and 25:27 (disclosing "there [was] no *effective, fully interactive*

modality" for real time Internet interaction because the prior methods for real-time interaction required "large files or packets and require[d] high levels of bandwidth and computer processing power.").

Lastly, novelty is different from patent eligibility under step two. "[M]erely reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (noting that "a claim for a *new* abstract idea is still an abstract idea"). Thus, even if Samesurf claims its alleged improvements are novel under 35 U.S.C. § 102,[5] this too fails to save the Asserted Claims from claiming ineligible subject matter.

Accordingly, nothing in the Asserted Claims adds an inventive step to the abstract idea of exchanging information for simultaneous interactions. The claims are therefore ineligible under Section 101.

### D.   The Dependent Claims Remain Directed to the Same Abstract Idea of Sending and Receiving Information for Simultaneous Interactions, and Do Not Add an Inventive Step

Similar to the independent claims discussed above, the focus of the dependent claims remain directed to the same abstract idea of sending and receiving information for simultaneous interaction:

"further comprising receiving an invitation to join the synchronized browsing session." cl. 2

"wherein the invitation comprises the hyperlink associated with the synchronized browsing session." cl. 3

"wherein the invitation further comprises a session identifier." cl. 4

"wherein the invitation is received via: a social network communication; a news feed; an email message; an instant message communication; a micro-blogging communication; a text message communication; or other communication medium." cl. 5

"wherein information related to the shared user input web browsing

---

[5] Intuit does not, of course, agree with such a contention.

interaction comprises: form data; java script data; or other web browsing interaction data." cl. 6

"wherein the shared user input web browsing interaction is depicted in a first web browser window." cl. 7

"wherein non-shared web browsing interactions are depicted in a second web browser window." cl. 8.

"wherein the shared user input web browser action further comprises a log-in into a restricted-access webpage." cl. 9.

'591 patent at cls. 2-9.

The dependent claims merely add additional token steps to carry out the organized human activity, or use conventional computer and Internet components required to automate and carry out the abstract idea on these devices, which does not save the claim from being abstract. *See Alice*, 573 U.S. at 221-26; *Credit Acceptance Corp.*, 859 F.3d at 1055; *Univ. of Fla. Rsch. Found., Inc.*, 916 F.3d at 1367.

Additional invitations (cl. 2), and the format in which the invitation is sent, *e.g.*, via email (cl. 5), simply add another step to carry out the claimed abstract idea of sending and receiving information similar to sending and receiving paper mail. *Cf. Symantec Corp.*, 838 F.3d at 1313.  Hyperlinks, session identifiers, computer code, and web browser windows are mere computer and Internet tools required to carry out the abstract sending and receiving of information for simultaneous interaction (cls. 3, 4, 6-8), tools that cannot save claims from an abstract idea. *See Finjan, Inc.*, 879 F.3d at 1303; *cf. Pragmatus Telecom, LLC,* 114 F. Supp. 3d at 200 (collaborative screen sharing is abstract); *Williamson,* 212 F. Supp. 3d at 897 (displaying windows on two different computer systems is abstract).

The above dependent claims make no mention for how to improve efficiency and bandwidth. *See Two-Way Media Ltd.*, 874 F.3d at 1337.  Regardless, improved efficiency and bandwidth are abstract ideas. *See Repifi*, 2022 WL 794981, at *2-3 (improved efficiency); *Sensormatic Elecs., LLC,* 2021 WL 2944838, at *3 (improved bandwidth).  To the extent claim 9 purports to improve security, such limitation is nonetheless still an abstract idea. *See Innovation Scis., LLC,* 778 F. App'x at 863.

FENWICK & WEST LLP

No dependent claim adds an inventive step.  The dependent claims either add generic computer and Internet components performing their ordinary functions (cls. 3-9), or add additional well-understood, routine, conventional, and token steps to carry out the sending and receiving of information for simultaneous interaction (cls. 2, 9).  All of which fail *Alice* Step two.  *See Alice*, 573 U.S. at 225; *Bilski*, 561 U.S. at 611-12; *Ultramercial, Inc.*, 772 F.3d at 714-716; *Mortgage Grader, Inc.,* 811 F.3d at 1324-25.

## IV.   CONCLUSION

For the foregoing reasons, Intuit requests that the Court dismiss this action with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to allege infringement of a patentable claim under 35 U.S.C. § 101.

Dated:  May 23, 2022                      Respectfully submitted,

FENWICK & WEST LLP

By:*/s/ Michael Sacksteder*
       Michael J. Sacksteder
       *Attorneys for Defendant*
       INTUIT INC.

## CERTIFICATE OF CONFERENCE

This motion is made following the conference of counsel that took place on May 16, 2022.