1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAMESURF, INC.,

Plaintiff,

v.

INTUIT, INC.,

Defendant.

Case No.: 3:22-cv-00412-RSH-DDL

**CLAIM CONSTRUCTION ORDER**

In this case, Plaintiff Samesurf, Inc. ("Samesurf") alleges that Defendant Intuit, Inc. ("Intuit") infringes U.S. Patent No. 9,483,448 ("the '448 Patent"). On February 6, 2025, the Parties filed their Joint Claim Construction Hearing Statement, Chart, and Worksheet in accordance with Patent Local Rule 4.2. ECF Nos. 89, 90, 91. On March 3, 2025, the Parties filed an Amended Joint Claim Construction Hearing Statement, Chart, and Worksheet. ECF Nos. 96-1, 96-2, 96-3. On March 17, 2025, the Parties filed their Opening

Claim Construction Briefs. ECF Nos. 99, 100. On March 28, 2025, the Parties filed their Responsive Claim Construction Briefs. ECF Nos.[1] 102, 103-1.

The Court held a claim construction hearing on Thursday, April 17, 2025, at 1:30pm. Following the hearing, the Court issues this Claim Construction Order.

## I.    BACKGROUND

On March 29, 2022, Samesurf filed a complaint against Intuit, alleging infringement of the '448 Patent, U.S. Patent No. 9,185,145 ("the '145 Patent"), and U.S. Patent No. 8,527,591 ("the '591 Patent") (collectively "the Asserted Patents"). Compl. (Mar. 29, 2022), ECF No. 1. Samesurf alleges that Intuit has infringed the Asserted Patents by utilizing Samesurf's patented co-browsing technology as part of Intuit's TurboTax Online, QuickBooks Online, TurboTax Live, QuickBooks Live, Smartlook, and other co-browsing enabled Intuit products. *See* Compl., ECF No. 1 ¶¶ 47-49, 87-208.

On December 16, 2022, Intuit filed *inter partes* review ("IPR") petitions with the Patent Trial and Appeal Board ("PTAB") challenging all the claims in the Asserted Patents: IPR2023-00339, IPR2023-00341, and IPR2023-00342. ECF No. 59 at 2. On January 10, 2023, the Court denied Intuit's motion to dismiss Samesurf's complaint on the grounds that the asserted claims are invalid under 35 U.S.C. § 101. ECF No. 27. On January 24, 2023, Intuit filed an answer to Samesurf's complaint, ECF No. 28, and, on March 13, 2023, the Court issued a scheduling order for the action. ECF No. 35.

On June 28, 2023, the PTAB granted Intuit's IPR petitions and instituted IPR proceedings as to all the claims in the Asserted Patents. ECF No. 59 at 2. On June 30, 2023, the Court granted the parties' joint motion to stay the action pending the IPR proceedings. ECF No. 60.

---

[1]    On March 28, 2025, Samesurf filed a Responsive Claim Construction Brief that exceeded the page limits set forth in the Court's Civil and Patent Local Rules, and then on April 1, 2025, Samesurf filed a Modified Responsive Claim Construction Brief that the Court accepted as timely filed. *See* ECF Nos. 101, 103, 104.

On June 25, 2024, the PTAB issued Final Written Decisions ("FWD") in the IPR proceedings, finding that claims 1-16 of the '448 Patent are not unpatentable [ECF No. 61-3 at 63], but that all the claims of the '145 and '591 Patents are unpatentable as obvious under 35 U.S.C. § 103 [ECF Nos. 61-1 at 1, 5, 62 at 2]. In light of the PTAB's decisions, Samesurf agreed to withdraw both the '145 and the '591 Patents from this action when the IPR stay was lifted. ECF No. 61-1 at 5; *see* ECF No. 64 at 4. On October 7, 2024, the Court granted Samesurf's motion to lift the stay. ECF No. 64. On October 23, 2024, the Court issued an amended scheduling order. ECF No. 72.

The '448 Patent is the sole remaining Asserted Patent in this action. *See* ECF No. 61-1 at 5; ECF No. 64 at 4. The '448 Patent is entitled "method and apparatus for the implementation of a real-time, sharable browsing experience on a host device," and was issued on November 1, 2016. U.S. Patent No. 9,483,448, at [45], [54] (issued Nov. 1, 2016).

In describing the background of the invention, the specification of the '448 Patent explains:

> While the explosion of social media has allowed people to be connected on the internet more than ever before, browsing the internet has remained a largely solitary experience. Users of social media websites or applications communicate by taking turns, posting information rather than communicating with one another in real time. . . .
>
> Despite the obvious demand for socialization on the internet and despite the desire of many users to utilize the web to view online content with others in real-time, there is no effective, fully interactive modality that enables a group of users to view and interact with internet content and media simultaneously with others on different computers or other connected devices with all of those users empowered to interact with that content in real-time on a simultaneous basis.

*Id.* at col. 1 l. 47 to col. 2 l. 21. The specification then describes some of the specific problems with "screen sharing," *see id.* at col. 3 ll. 26–44, and states: "the current art lacks

technology that would simultaneously connect two or more users in a medium that would allow all of them to both interact with one another and with the content itself in real time and in a synchronized or shared fashion," *id.* at col. 2 ll. 8-12. *See also id.* at col. 3 ll. 45–48 ("There is a need in the art for an internet enabled collaboration, online commerce, and social networking innovation that facilitates real time sharing of a more complete internet experience.").

In order "[t]o minimize the limitations in the prior art," the '448 Patent disclosed "a method for establishing a synchronized browsing session, comprising sending a request to establish the synchronized browsing session to a synchronization server, receiving a confirmation message from the synchronization server including a session identifier associated with the established synchronized browsing session, and sending an invitation to an invitee to join the synchronized browsing session, wherein the invitation includes the session identifier." *Id.* at col. 2 l. 59 to col. 3 l. 3. The specification explains: "The present invention allows two or more persons browsing the internet to share their internet browsing experience and have all users simultaneously browse and fully interact with web sites, games, virtual worlds, or other online applications in real time." *Id.* at col. 5 ll. 22–26.

As an example of the claimed invention, Independent Claim 1 of the '448 Patent recites:

> 1. A method performed by a host device for establishing a synchronized browsing session between the host device and an invitee device, comprising:
>
> sending a request to establish the synchronized browsing session to a synchronization server;
>
> receiving a confirmation message from the synchronization server including a session identifier generated by the synchronization server, wherein the session identifier is associated with the host device and the established synchronized browsing session;
>
> sending an invitation to an invitee device to join the synchronized browsing session, wherein the invitation includes the session identifier;

4

recording a shared web browsing interaction responsive to determining that a web browsing interaction of the host device within a web browsing window is a sharable web browsing interaction;

sending a request for webpage content to a website server independent of the synchronization server;

subsequent to sending the request for webpage content to the website server, transmitting information related to the shared web browsing interaction to the synchronization server,

wherein the information related to the shared web browsing interaction is to be processed by a browser of the invitee device and enables the invitee device to generate a request to retrieve a substantially the same webpage content as the request for the webpage content from the host device;

wherein the synchronization server transmits the information related to the shared web browsing interaction to the invitee device in response to receiving the information related to the shared web browsing interaction from the host device, and

wherein the invitee device retrieves data from the website server in response to receiving the information related to the shared web browsing interaction from the synchronization server, the data associated with the webpage content requested by the host device and the information related to the shared web browsing interaction; and

receiving, responsive to sending the request for webpage content to the website server and after transmitting the information related to the shared web browsing interaction to the synchronization server, the requested webpage content from the website server.

*Id.* at col. 23 l. 30 to col. 24 l. 8.

By the present claim construction statements, charts, worksheets, and briefs, the Parties request that the Court resolve ten claim construction disputes regarding the '448 Patent. *See* ECF Nos. 96-1, 96-2, 96-3, 99, 100.

## II.    LEGAL STANDARDS

"A determination of infringement involves a two-step analysis. 'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.'" *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003) (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)); *see Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2022). The first step of the infringement analysis — referred to as claim construction — is now before the Court. Claim construction "is exclusively within the province of the court [to decide]," not the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996); *see Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015) (holding claim construction is an issue of law for the court to decide). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." *Teva*, 574 U.S. at 326.

"It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc)); *accord Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to

lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *O2 Micro*, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" *Id.* (quoting *Innova*, 381 F.3d at 1116); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217–18 (Fed. Cir. 2014).

In determining the proper construction of a claim, a court should first look to the language of the claims. *See Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("'[C]laim construction must begin with the words of the claims themselves.'"); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("'a claim construction analysis must begin and remain centered on the claim language itself'"). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. *See Phillips*, 415 F.3d at 1314.

A court must also read claims "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979; *see* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014) (quoting *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011)).

But "[t]he written description part of the specification does not delimit the right to exclude.  That is the function and purpose of claims." *Markman*, 52 F.3d at 980. Therefore, "it is improper to read limitations from a preferred embodiment described in the

specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012); *accord Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 514 (Fed. Cir. 2015).

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence. *Phillips*, 415 F.3d at 1317. The prosecution history "consists of the complete record of the proceedings before the [Patent and Trademark Office ("PTO")] and includes the prior art cited during the examination of the patent." *Id.* "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* In addition, a court should also consult the prosecution history "so that the court can exclude any interpretation that was disclaimed during prosecution." *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1317).

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583; *Teva*, 574 U.S. at 331; *see also Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence."). However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting *Phillips*, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. *Phillips*, 415 F.3d at 1319. "'[E]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims.'" *Genuine Enabling*

*Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'"). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." *Teva*, 574 U.S. at 332.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro*, 521 F.3d at 1362; *see also Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) ("'[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.'"). In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. *O2 Micro*, 521 F.3d at 1360; *Phillips*, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361. If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. *Id.* at 1362; *Eon*, 815 F.3d at 1319.

## III.   ANALYSIS OF DISPUTED CLAIM TERMS

### A.   "synchronized browsing session"

Samesurf proposes that the claim term "synchronized browsing session" be construed as "browsing session in which the host device and the invitee device experience substantially the same browsing experience substantially in real time." ECF No. 96-1 at 1. Intuit proposes that the claim term be construed as "process administered by a synchronization server allowing two or more internet users to view and fully interact with the same internet content in a simultaneous, real-time fashion using standard web browsers." *Id.*; ECF No. 99 at 5.

Samesurf contends that its proposed construction is correct because, in its Final Written Decision in IPR proceedings concerning a related patent (the '591 Patent), the PTAB "construed the claim term 'synchronized browsing session' to mean 'a browsing session among two or more users in which users experience a shared browsing experience substantially in real-time.'" ECF No. 100 at 8. In IPR proceedings for the '591 patent, the PTAB in a final written decision construed the claim term "synchronized browsing session" as:

> [A] browsing session among two or more users in which users experience a shared browsing experience substantially in real-time. That is, during a synchronized browsing session, two or more users see the same web pages on their browsers. Also, when one browser receives and displays a new web page, the remaining browsers receive and display substantially the same page.

ECF No. 100-1, Friedman Decl., Ex. C at 17 ("a synchronized browsing session experience requires a host and a guest device to experience the same browsing experience substantially in real-time"). The PTAB's construction aligns with the claim language, which describes the synchronized browsing session as a process established by the synchronization server to allow the invitee device to retrieve and display "substantially the same webpage content" as the host device. '448 Patent at col. 23 ll. 56–57. The PTAB's construction is also consistent with language in the specification explaining that this process occurs in "real time." *Id*. at col. 5 l. 26; *accord id.* at [57] Abstract. Therefore, the Court will adopt a construction for the claim term "synchronized browsing session" that aligns with the PTAB's construction. Nevertheless, this does not fully resolve the parties' claim construction dispute here as Intuit identifies several statements from the IPR proceedings that it contends constitute prosecution disclaimers. *See Sorensen*, 427 F.3d at 1378 (explaining that a court should consult the prosecution history "so that the court can exclude any interpretation that was disclaimed during prosecution").

By presenting its proposed construction for the claim term "synchronized browsing session," Intuit contends that the "synchronized browsing session": (1) must be

administered by the synchronization server; (2) must allow the users to view and fully interact with the same internet content; and (3) must allow the session to be in a simultaneous, real-time fashion. *See* ECF No. 99 at 5–7. Intuit argues that inclusion of these requirements in the Court's construction for this claim term is proper because Samesurf made certain prosecution disclaimers during the IPR proceedings as to the '448 Patent and the specification of the '448 Patent also contains disclaimers of claim scope. *See id.* at 6–7.

"Prosecution disclaimer 'preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution.'" *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). "[T]he doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'" *Id.* at 1360 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)).

"Such disclaimer can occur through amendment or argument." *Id.* at 1359. In addition, "statements made by a patent owner during an IPR proceeding," including statements made in a patent owner's preliminary response, "can be considered during claim construction and relied upon to support a finding of prosecution disclaimer." *Id.* at 1361; *see also id.* at 1362 ("[W]e hold that statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."); *see Maquet Cardiovascular LLC v. Abiomed Inc.*, No. 2023-2045, 2025 WL 876718, at *8 (Fed. Cir. Mar. 21, 2025).

"For a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'" *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022); *see also Aylus*, 856 F.3d at 1361 ("[T]o invoke the doctrine of prosecution disclaimer, any such statements must 'be both clear and

unmistakable.'"); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008) ("Prosecution disclaimer does not apply to an ambiguous disavowal."). "Thus, when [a] patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Computer Docking Station*, 519 F.3d at 1374; *see Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1141 (Fed. Cir. 2021).

In evaluating whether there has been a prosecution disclaimer, a court must take care "to interpret purported disavowals in the context of the prosecution history as a whole." *Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*, 133 F.4th 1359, 1366 (Fed. Cir. 2025) (citing *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009)). Further, "'[t]he party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a clear and unmistakable disclaimer that would have been evident to one skilled in the art.'" *Genuine Enabling Tech.*, 29 F.4th at 1374.

During the IPR proceedings as to the '448 Patent, Samesurf stated: "Claim 1 is a method claim performed by a 'host device' for establishing a 'synchronized browsing session' administered by a 'synchronization server.'" ECF No. 99-5, Ex. 4 at 11; *see also id.* at 12 ("According to exemplary claim 1, the 'host device' establishes a 'synchronized browsing session' that is administered by a 'synchronization server' . . . ."). Samesurf further stated: "Claim 11 is similar to claim 1 and claims a 'host device' for establishing a 'synchronized browsing session' administered by a 'synchronization server.'" These clear and unequivocal statements by Samesurf constitute a prosecution disclaimer specifically requiring that the synchronized browsing session is administered by the synchronization server. *See Genuine Enabling*, 29 F.4th at 1374; *see also* '448 Patent at col. 23 ll. 33–34 (claim language explaining that the synchronized browsing session is "establish[ed]" by the synchronization server), col. 9 ll. 47–49 ("Synchronization server 13 is designed to

establish and facilitate a synchronized browsing session between host device 10 and guest device 14.").

Samesurf argues that these statements do not represent a disclaimer because in these statements it was not distinguishing the claimed invention from the prior art. ECF No. 103-1 at 1-2. The Court rejects this argument. The doctrine of prosecution disclaimer applies to any clear and unmistakable statement made during prosecution that disclaims claim scope. *See Aylus*, 856 F.3d at 1361; *Computer Docking Station*, 519 F.3d at 1374. Such narrowing statements can occur when the patentee is attempting to distinguish the claimed invention from prior art. *See Traxcell*, 15 F.4th at 1141; *Computer Docking Station*, 519 F.3d at 1374. But it is not limited to those situations. *See, e.g.*, *Biogen Idec*, 713 F.3d at 1095–97 (finding prosecution disclaimer based on a patentee's response to an enablement rejection by the examiner). In the above statements, Samesurf clearly, unmistakably, and repeatedly stated that the synchronized browsing session is administered by the synchronization server. As such, the Court will adopt a claim construction for this claim term that incorporates the requirement that the synchronized browsing session is administered by the synchronization server.

During the IPR proceedings, in an effort to distinguish the invention claimed in the '448 Patent from the prior art references at issue, Samesurf also stated:

> The distinct system architecture and method utilizing "information related to the shared web browsing interaction" described and claimed in the '448 Patent results in significant improvements over the cited prior art, including, for example, enabling "all users in a session to click, input, and log into **fully interactive experiences in a simultaneous or nearly simultaneous manner**" within a framework that requires less bandwidth and processing power than prior art systems while significantly enhancing the security and protection of private information during shared sessions due to the system's ability to determine whether or not "a web browsing interaction of the host device . . . is a sharable web browsing interaction."

ECF No. 99-4, Ex. 3 at 23–24 (emphasis added) (citing '448 Patent at claim 1, col. 2 ll. 15–44); *see also* ECF No. 99-5 at, Ex. 4 at 9. Samesurf contends that in the passage above, it did not distinguish the claims from the prior art on the basis of users fully interacting with the same internet content. ECF No. 103-1 at 2. The Court rejects Samesurf's contention. In the passage at issue, Samesurf clearly states that the invention claimed in the '448 Patent – unlike the cited prior art – enables users in a synchronized browsing session to have "fully interactive experiences in a simultaneous or nearly simultaneous manner." ECF No. 99-4, Ex. 3 at 23–24. Because Samesurf made this clear and unequivocal statement in an effort to distinguish its invention from the prior art at issue in the IPR proceedings, the statement represents a clear and unmistakable prosecution disclaimer requiring that the synchronized browsing session provide the two or more users with fully interactive experiences in a simultaneous or nearly simultaneous manner. *See Traxcell*, 15 F.4th at 1141 ("'[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well.'"); *Computer Docking Station*, 519 F.3d at 1374 ("A patentee could [make a disclaimer], for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art"); *MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir. 2007) ("Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not.").

In addition, the specification of the '448 Patent also includes a disclaimer requiring that the synchronized browsing session provide the two or more users with fully interactive and simultaneous experiences in real time. The specification provides: "The present invention allows two or more persons browsing the internet to share their internet browsing experience and have all users **simultaneously browse and fully interact** with web sites, games, virtual worlds, or other online applications **in real time**." '448 Patent col. 5 ll. 22–26 (emphasis added). "When a patentee 'describes the features of the 'present invention'

as a whole,' he implicitly alerts the reader that 'this description limits the scope of the invention.'" *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) (quoting *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013)); *accord Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1025 (Fed. Cir. 2015); *see, e.g.*, *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019) ("It is axiomatic that, where the specification 'describes "the present invention" as having [a] feature,' that representation may disavow contrary embodiments."). This language in the specification provides an additional clear and unequivocal disclaimer requiring that the synchronized browsing session provide the two or more users with fully interactive experiences in a simultaneous, real-time or nearly simultaneous, real-time manner. At the claim construction hearing, Samesurf argued that the passage at issue is not a disclaimer because according to Samesurf, the passage uses permissive language, specifically the word "allow." The Court disagrees. The word "allow" is not permissive language. By using the word "allow," the specification in this passage is explaining the required capabilities of the claimed invention.[2] *See also* '448 Patent col. 2, ll. 13–21 (disparaging the prior art for not being "fully interactive"). As such, it is not permissive language.

At the claim construction hearing, Samesurf also argued that this language in the specification should not be deemed a disclaimer because elsewhere in the specification, the specification refers to the synchronized browsing session without using the specific term "fully interact[ive]." *See, e.g.*, *id.* col. 5 ll. 30–37, col. 8 ll. 13–16. The Court rejects this argument. In the passages identified by Samesurf, the specification is entirely silent as to whether the claimed synchronized browsing session is fully interactive. *See id.* In light of this, those passages do not detract from or contradict the specification's earlier clear and

---

[2]     For this same reason, the Court rejects Samesurf's assertion that this passage is merely referring to a potential benefit of the claimed invention. It is not a benefit. It is a capability requirement.

unequivocal statement that "the present invention" allows for simultaneous and fully interactive browsing in real time via the synchronized browsing session. At the claim construction hearing, Samesurf also asserted that the specification covers embodiments where "the invitee device does not have the capability to move things around and direct what pages are being pulled up." The Court also rejects this argument. Samesurf was unable to identify any passage from the specification that actually contains such an embodiment. The one passage cited by Samesurf to the Court makes no mention of the invitee device's ability to interact with webpages. *See* '448 Patent col. 7 ll. 26–28.[3] As such, the Court will adopt a claim construction for this claim term that incorporates Samesurf's disclaimer requiring that the synchronized browsing session provide the two or more users with fully interactive experiences in a simultaneous, real-time or nearly simultaneous, real-time manner.

Intuit also contends that the Court's construction for this claim term should include the specific requirement that the synchronized browsing session share internet browsing interactions in a "simultaneous real-time fashion." ECF No. 99 at 7. To support this contention, Intuit identifies statements made by Samesurf during the IPR proceedings and statements from the specification that describe the synchronized browsing session as sharing internet browsing interactions in a simultaneous real-time fashion. *Id.* The statements identified by Intuit are insufficient to constitute a clear and unmistakable disclaimer requiring that the synchronized browsing session operate in a simultaneous real-time fashion. The Court acknowledges that there are statements in the specification and the

---

[3]    In the cited passage, the specification explains that in certain embodiments the host device and the guest device can be "both leading and following devices." '448 Patent col. 7 ll. 26–30. But in explaining this, the specification is referring to the flow of "webpage interactions" information/data between the devices via the synchronization server. *See id.* at col. 7 ll. 14–36. There is no reference to the devices' abilities to interact with the webpages. *See also id.* at col. 5 ll. 61–66 (listing a "following participant" clicking on links that open in new tabs as an example of how the users can "'fully interact'" with internet content).

IPR proceedings describing the synchronized browsing session as operating in a simultaneous real-time fashion. *See, e.g.*, '448 Patent col. 5, ll. 22–26; ECF No. 99-5, Ex. 4 at 14. But there are other statements in the specification and the IPR proceedings describing the synchronized browsing session as operating "in a simultaneous or nearly simultaneous manner." ECF No. 99-4, Ex. 3 at 23; *see, e.g.*, '448 Patent col. 3, l. 35 ("in a simultaneous or nearly simultaneous fashion"); ECF No. 99-5, Ex. 4 at 5 ("the peer-to-peer simple webpage sharing system lacks the ability (1) to display webpages at substantially the same time), 63–64 ("[T]here is no teaching or suggestion by Prajapat that the two browsers are simultaneously, or even nearly simultaneously, sharing internet browsing on the same web page in real time, *i.e.*, that the browsers are engaged in a 'synchronized browsing session,' as stated in the claims."); ECF No. 99-5 at 2 ("Petitioner incorrectly contends that the claims do not require 'two browsers [that] are simultaneously, or nearly simultaneously, sharing internet browsing of the same webpage in real time.'"). Therefore, the Court's construction for this claim term will only require that the synchronized browsing session operate in a simultaneous, real time or nearly simultaneous, real-time manner.

Intuit's proposed construction also requires that the synchronized browsing session occur on "standard web browsers." ECF No. 99 at 5. But Intuit fails to identify anything in the claim language, specification, or prosecution history that would support the inclusion of this specific requirement. *See generally id.* at 6–8. As such, the Court declines to include the requirement that the synchronized browsing session occur on "standard web browsers" in its construction for this claim term.

Finally, Samesurf argues that the Court should reject Intuit's proposed construction for this claim term (and other claim terms) because Intuit contended during the IPR proceedings that the claim term should be given its plain and ordinary meaning. ECF No. 100 at 2, 9–10; *see also, e.g.*, *id.* at 11, 15, 21; *see also* ECF No. 103-1 at 6. Samesurf has not provided the Court with any authority holding that an accused infringer/IPR petitioner is bound by the claim construction positions it takes during IPR proceedings. The doctrine

of prosecution history disclaimer, which applies to statements made during IPR proceedings, only applies to "statements made by a patent owner." *Aylus*, 856 F.3d at 1362; *see also id.* at 1360 ("[T]he doctrine of prosecution disclaimer ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.'"). It does not apply to statements made by an accused infringer/IPR petitioner. And the single case cited by Samesurf in support of its position, *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988), is of no aid to Samesurf. *SmithKline* holds that when a court "construe[s] the claims one way for determining validity, it is axiomatic that the claims must be construed in the same way for infringement." *Id.* at 889 n.7; *see Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1075 (Fed. Cir. 2009) ("[I]t is axiomatic that claims are construed the same way for both invalidity and infringement."). Here, the Court has not yet construed any of the claim terms at issue. Therefore, the holding from *SmithKline* is inapplicable at this stage of the proceedings. Accordingly, the Court rejects Samesurf's contention that Intuit is bound by the claim construction positions that Intuit took during the IPR proceedings.[4] *See, e.g.*, *Oxygenator Water Techs., Inc. v. Tennant Co.*, No. 20-CV-358 (ECT/HB), 2021 WL 3661587, at *4 n.2 (D. Minn. Aug. 18, 2021) (rejecting argument that accused infringer's proposed constructions should be rejected because its construction positions were inconsistent with the positions it took during IPR proceedings).

In sum, the Court adopts a modified version of the PTAB's claim construction for the claim term "synchronized browsing session" that incorporates the prosecution disclaimers made during the IPR proceedings. According, the Court construes "synchronized browsing session" as "a browsing session administered by the synchronization server in which the host device and the invitee device have substantially

---

[4]    At the claim construction hearing, Samesurf conceded that Intuit is not bound by the claim construction positions it took during the IPR proceedings.

the same fully interactive browsing experience in a simultaneous or nearly simultaneous real-time manner."

        B.   <u>"invitee device"</u>

Samesurf proposes that the claim term "invitee device" be construed as "electronic device that has a visual user interface and a network connection such that a user may access and view online content that is further defined in the claim." ECF No. 96-1 at 21. Intuit proposes that the claim term be construed as "device that may join a synchronized browsing session to independently and continuously access the website server on its own accord for retrieval of the host device's web browsing interactions without permission from or reliance on the synchronization server." *Id.*; ECF No. 99 at 11.

Intuit argues that the Court should adopt its proposed construction based on disclaimers made by Samesurf during the IPR proceedings. ECF No. 99 at 11–13; ECF No. 102 at 6. During the IPR proceedings, in an effort to distinguish the invention claimed in the '448 Patent from the prior art at issue, Samesurf made the following statements:

> There is a fundamental mismatch between the alleged prior art relied upon by Petitioner and the challenged claims of the '448 Patent. The '448 Patent discloses a synchronization server that detects and passes "information related to the shared web browsing interaction" that originated on the host device **for separate and independent replication by the guest device(s) who utilize that "information related to the web browsing interaction" to continuously and directly access a website server "independent of the synchronization server."**

ECF No. 99-4, Ex. 3 at 4–5 (emphasis added) (citing '448 Patent at claim 1).

> Whereas the web media server in Figure 1 of Prajapat acts as a proxy or middleman to the client browser accessing the desired webpage, the host and **guest devices in the '448 Patent never request permission from the synchronization server to access the website server**—rather, the host and

**guest devices are independently and continuously accessing the website server on their own accord for retrieval of the web browsing interactions**.

*Id.* at 8 (emphasis added).

> [Prajapat] is a fundamentally different system from the one that is disclosed by the '448 Patent wherein **the host and guest devices access the website server independent of the synchronization server**.

*Id.* at 33 (emphasis added).

> Petitioner's cited embodiment of Lebrun is distinguishable from the '448 Patent claims because "synchronized browsing," as described and claimed in the '448 Patent, requires the guest device itself to "retrieve data from the website server" (i.e. to independently access content from a website server). . . .
>
> **The guest device then uses the information** that is related to the shared web browsing interaction **to replicate the same interaction by independently accessing the website server on a continuous basis**. . . .
>
> [T]he '448 Patent's specification and claims make it clear that the guest device utilizes the information related to the shared web browsing interaction received from the synchronization server to "retrieve[] data from the website server" without mediation from the synchronization server.

*Id.* at 50 (emphasis added); *see also id.* at 1 (arguing that the prior art does not "teach processes that involve a guest device directly interacting with a website server to independently replicate these web browsing interactions in real time"); ECF No. 99-5, Ex. 4 at 5 ("Like Lebrun, Prajapat's configuration is distinctly different from the '448 Patent, in which both the host and **invitee devices independently access the website server** as opposed to a 'middleman' server accessing the webpage." (emphasis added)); ECF No. 99-6, Ex. 5 at 1 ("In the '448 Patent claims, the . . . 'synchronized browsing session' . . . allow[s] **the invitee device to make its own request to the web server to thereby**

**independently replicate the host's web browsing interactions in real time**." (emphasis added)).

Because Samesurf made these clear and unequivocal statements in an effort to distinguish its invention from the prior art at issue in the IPR proceedings, these statements represent a clear and unmistakable prosecution disclaimer requiring that the guest/invitee device independently and continuously access the website server on its own accord for independent replication of the host device's web browsing interactions without permission or mediation from the synchronization server. *See Traxcell*, 15 F.4th at 1141 ("'[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well.'"); *Computer Docking Station*, 519 F.3d at 1374; *MBO Lab'ys*, 474 F.3d at 1330. Intuit's proposed construction for this claim term properly incorporates Samesurf's prosecution disclaimer.

In response, Samesurf notes that all the statements from the IPR proceedings that Intuit cites in its Opening Claim Construction Brief to support a finding of disclaimer are from Samesurf's Patent Owner Preliminary Response. *See* ECF No. 103-1 at 7. But this is of no consequence because, as seen in the citations above, Samesurf also stated in its Patent Owner Response and Sur-Reply that the invitee device independently accesses the website server to independently replicate the host's web browsing interactions without the use of a middleman server. *See* ECF No. 99-5, Ex. 4 at 5; ECF No. 99-6, Ex. 5 at 1. Further, even if the statements at issue had only been contained in Samesurf's Patent Owner Preliminary Response, that also would be of no consequence because the Federal Circuit has recognized that a prosecution disclaimer can be contained solely in a Patent Owner Preliminary Response; it need not be in the subsequent Patent Owner Response.[5] *See, e.g., Aylus*, 856

---

[5] At the claim construction hearing, Samesurf contended that, during the IPR proceedings and in its institution decision, the PTAB rejected Samesurf's contention that the invitee device requires continuous access of the website server without mediation from

F.3d at 1359, 1361–64 (finding prosecution disclaimer based on statements the patentee made solely in a patent owner preliminary response).

In sum, the Court adopts a slightly modified version of Intuit's proposed construction for this claim term,[6] and the Court rejects Samesurf's proposed construction. Accordingly, the Court construes the claim term "invitee device" as "device that may join a synchronized browsing session to independently and continuously access the website server on its own accord for independent replication of the host device's web browsing interactions without permission or mediation from the synchronization server."

C.     "synchronization server"

Samesurf proposes that the claim term "synchronization server" be construed as "a server that establishes and facilitates a synchronized browsing session between a host device and an invitee device." ECF No. 96-1 at 9. Intuit proposes that the claim term be

_____

the synchronization server. Even accepting this as true, this also is of no consequence. The determination of whether there has been a prosecution disclaimer "focuses on what the applicant said, not on whether the representation was necessary or persuasive." *Uship Intell. Props., LLC v. United States*, 714 F.3d 1311, 1315 (Fed. Cir. 2013) ("The fact that the applicant may have given up more than was necessary does not render the disclaimer ambiguous."); *see also Azurity*, 133 F.4th at 1366 ("Statements that clearly and unmistakably disavow claim scope to one skilled in the art are binding, 'even if [the patentee] said more than needed to overcome a prior art [challenge].'"). Further, the Court rejects Samesurf's contention that it abandoned its claim scope positions for this term following the PTAB's institution decision. As explained above, even following the PTAB's institution decision, Samesurf continued to take the position that the invitee device independently accesses the website server to independently replicate the host's web browsing interactions without the use of a middleman server. *See* ECF No. 99-5, Ex. 4 at 5; ECF No. 99-6, Ex. 5 at 1. Therefore, this case is distinguishable from *Ecolab*. *See Ecolab*, 569 F.3d at 1343 (finding no prosecution disclaimer where the patentee "recognized its error and never again repeated or relied upon the erroneous rationale").

[6] The Court adopts a slightly modified version of Intuit's proposed construction in order to better match the precise disclaimer that was made by Samesurf during the IPR proceedings. *Cf. Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008) ("[E]ven in the case of an unequivocal disavowal of claim scope, the court must construe the claim 'congruent with the scope of the surrender.'").

construed as "a server that continuously detects and transmits information related to the shared web browsing interaction that is received from the host device to send to and allow the invitee device to continuously use received web browsing interactions to replicate the same interaction independent of the synchronization server." *Id.*; ECF No. 99 at 8.

Intuit again argues that the Court should adopt its proposed construction based on disclaimers made by Samesurf during the IPR proceedings. ECF No. 99 at 8–10. Specifically, Intuit contends that during the IPR proceedings Samesurf repeatedly reiterated that the "synchronization server" cannot mediate interactions between the invitee device and the website server. The Court agrees with Intuit that during the IPR proceedings, Samesurf made prosecution disclaimers requiring that the invitee device independently and continuously access the website server on its own accord for independent replication of the host device's web browsing interactions without permission or mediation from the synchronization server. *See supra* Order at Section III.B. Nevertheless, that specific disclaimer is already included in the Court's claim construction for the claim term "invitee device."[7] *See id.* Intuit fails to explain why it is necessary for the Court to also include that disclaimer in its construction for the claim term "synchronization server." Further, Intuit's proposed construction for this claim term includes additional language requiring that the synchronization server "continuously detect[] and transmit[] information related to the shared web browsing interaction" that is not reflected in the disclaimers at issue.

Samesurf's proposed construction is supported by the '448 Patent's specification. The specification explains: "During a synchronized browsing session, data communications sent by host device 10 to website server 12 is forwarded to synchronization server 13 in order to provide for synchronized browsing with guest devices

---

[7]    In addition, portions of this disclaimer are also reflected in the Court's claim constructions for the claim terms "information related to the shared web browsing interaction" and "the invitee device retrieves data from the website server." *See infra* Order at Sections III.D, III.H.

14 and 15." '448 Patent col. 6 ll. 37–40; *see also id.* at col. 3 ll. 4–14. The specification further states: "Synchronization server 13 is designed to establish and facilitate a synchronized browsing session between host device 10 and guest device 14." *Id.* at col. 9 ll. 47–49.

In sum, the Court adopts Samesurf's proposed construction for this claim term, and the Court rejects Intuit's proposed construction. Accordingly, the Court construes the claim term "synchronization server" as a "server that establishes and facilitates a synchronized browsing session between a host device and an invitee device."

D.     "information related to the shared web browsing interaction"

Samesurf proposes that the claim term "information related to the shared web browsing interaction" be construed as "information that enables the invitee device to generate a request to retrieve a substantially the same webpage content as the request for the webpage content from the host device." ECF No. 96-1 at 15. Intuit proposes that the claim term be construed as "information describing shared web browsing interaction(s) taken by the host device that is used for separate and independent replication of such interactions by the invitee device." *Id.*; ECF No. 99 at 10.

Intuit again argues that the Court should adopt its proposed construction based on disclaimers made by Samesurf during the IPR proceedings. ECF No. 99 at 10–11; ECF No. 102 at 5–6. During the IPR proceedings, Samesurf contended that the term "information related to the shared web browsing interaction" should be construed as "'data describing interactions performed on a website by a host device.'" ECF No. 99-5, Ex. 4 at 34–35. This proposed construction provided by Samesurf during the IPR proceedings constitutes a clear and unmistakable prosecution disclaimer requiring that the information at issue be information describing interactions performed on a website by a host device. *See Aylus*, 856 F.3d at 1361–62; *see, e.g.*, *Game & Tech. Co. v. Blizzard Ent., Inc.*, No. 216CV06499MLHSKX, 2018 WL 3198435, at *6 (C.D. Cal. Apr. 4, 2018) (finding prosecution disclaimer where patentee provided a definition for the claim term during IPR proceedings); *see also Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th

1369, 1378 (Fed. Cir. 2022) (explaining that a patentee can "'act as its own lexicographer'"
by "'clearly set[ting] forth a definition of the disputed claim term'"). The first half of Inuit's
proposed construction – "information describing shared web browsing interaction(s)
[performed on a website] by the host device"[8] – properly incorporates the definition for
this claim term that Samesurf provided during the IPR proceedings.

The second half of Intuit's proposed construction requires that the information at
issue be "used for separate and independent replication of such interactions by the invitee
device." ECF No. 99 at 10. During the IPR proceedings, in an effort to distinguish the
invention claimed in the '448 Patent from the prior art reference Prajapat, Samesurf argued:

> the '448 Patent's synchronization server does not act as a middleman between
> the host and guest devices and the website server. Instead, it effectuates the
> transfer of information related to the shared web browsing interaction between
> the host and guest devices so that **the guest device can employ the**
> **information related to the shared web browsing interaction to separately**
> **access the website server in order to independently replicate or simulate**
> **the host device's web browsing interactions in real time**.

ECF No. 99-4, Ex. 3 at 33 (emphasis added); *see also id.* at 39 (making similar
representation to distinguish the claimed invention from the Lebrun prior art reference).
Because Samesurf made these clear and unequivocal statements in an effort to distinguish
its invention from the Prajapat and Lebrun prior art references, these statements represent
a clear and unmistakable disclaimer of claim scope requiring that the guest/invitee device

---

[8]    Here, the Court sets forth a slightly modified version of the first half of Intuit's
proposed construction in order to better match the precise disclaimer that was made by
Samesurf during the IPR proceedings. *Cf. Cordis*, 511 F.3d at 1177 ("[E]ven in the case of
an unequivocal disavowal of claim scope, the court must construe the claim 'congruent
with the scope of the surrender.'").

separately and independently replicate the web browsing interactions.[9] *See Traxcell*, 15 F.4th at 1141 ("'[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well.'"); *Computer Docking Station*, 519 F.3d at 1374; *MBO Lab'ys*, 474 F.3d at 1330. The second half of Intuit's proposed construction properly incorporates this prosecution disclaimer by Samesurf.

In sum, the Court adopts a slightly modified version of Intuit's proposed construction for this claim term, and the Court rejects Samesurf's proposed construction. Accordingly, the Court construes that claim term "information related to the shared web browsing interaction" as "information describing shared web browsing interaction(s) performed on a website by the host device that is used for separate and independent replication of such interactions by the invitee device."

E.  "recording a shared web browsing interaction responsive to determining that a web browsing interaction of the host device within a web browsing window is a sharable web browsing interaction"

Intuit argues that the claim term "recording a shared web browsing interaction responsive to determining that a web browsing interaction of the host device within a web browsing window is a sharable web browsing interaction" is indefinite. ECF No. 99 at 13–15. Samesurf argues that the claim term reasonably informs a person of ordinary skill in the art ("POSITA") about the scope of the claimed invention, and, therefore, the term is definite under 35 U.S.C. § 112(2). ECF No. 100 at 16.

---

[9]    Samesurf argues that these statements from the IPR proceedings do not constitute a disclaimer because Samesurf is merely describing what is already in the claims. *See* ECF No. 103-1 at 6–7. But Samesurf fails to identify any language in the '448 Patent's claims specifically explaining that the invitee device separately and independently replicates the web browsing interactions. Further, even assuming Samesurf is correct and this requirement is already included in the claim language, the Court then fails to see any harm in including this specific requirement in its construction for this claim term.

"Definiteness is a statutory requirement for patentability." *Niazi*, 30 F.4th at 1346. Under 35 U.S.C. § 112(b), a patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as the invention." 35 U.S.C. § 112(b).

"A claim fails to satisfy this statutory requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1369–70 (Fed. Cir. 2014) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)); *see Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053, 1059 (Fed. Cir. 2021) ("'[W]e look to the patent record—the claims, specification, and prosecution history—to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed.'" (quoting *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015))). This "reasonable certainty" standard "reflects a 'delicate balance' between 'the inherent limitations of language' and providing 'clear notice of what is claimed.'" *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1359 (Fed. Cir. 2019). "Th[e] standard 'mandates clarity, while recognizing that absolute precision is unattainable.'" *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 39 (Fed. Cir. 2020) (quoting *Nautilus*, 572 U.S. at 910); *see also BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) ("'Reasonable certainty' does not require 'absolute or mathematical precision.'").

"General principles of claim construction apply to indefiniteness allegations." *HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*, 940 F.3d 680, 688 (Fed. Cir. 2019). The party asserting indefiniteness bears "the burden of proving indefiniteness by clear and convincing evidence." *BASF*, 875 F.3d at 1365 (citing *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015)); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (holding that 35 U.S.C. § 282 "requires an invalidity defense to be proved by clear and convincing evidence").

The Court begins its indefiniteness analysis with the claim language. Independent claim 1 of the '448 Patent includes the method step of the host device "transmitting information related to the shared web browsing interaction to the synchronization server." '448 Patent col. 23 ll. 50–52. Prior to this step, the host device "record[s] a shared web browsing interaction responsive to determining that a web browsing interaction of the host device within a web browsing window is a sharable web browsing interaction." *Id.* at col. 23 ll. 43–46. The specification echoes this language when it explains: "The present invention further describes a method for implementing a synchronized browsing session, comprising recording a shared web browsing interaction, and transmitting information related to the shared web browsing interaction to a synchronization server." *Id.* at col. 3:15–19. The specification provides further detail by explaining: "a leading device, such as host device 10, may be defined as a device that possesses control within the synchronized browsing session, wherein webpage interactions performed by the leading device within shared browsing window 17 are forwarded to synchronization server 13." *Id.* at col. 7 ll. 6–10; *see also id.* at col. 8 ll. 8–13.

Intuit argues that the claim term is indefinite because nothing in the '448 specification explains what precisely "recording a shared web browsing interaction" means. ECF No. 99 at 13. But Samesurf correctly explains that for a web browsing interaction to be forwarded, it must first be recorded by the host device, otherwise the host device will have lost what the interaction was and therefore nothing could be forwarded. ECF No. 100 at 16–17. Further, Samesurf's expert, Mr. Friedman, has explained that: "In the context of a computer-based or a computerized system, recording would, generally speaking, be understood to mean capturing information." Doc. No. 100-2, Ex. 2 at 144:4–6. In light of this meaning for the term "recording" provided by Mr. Friedman, the claim term "recording a shared web browsing interaction . . ." provides a POSITA with reasonable certainty regarding the scope of the claim.

At the claim construction hearing, Intuit argued that the claim term "recording" is ambiguous because it could potentially include taking a video recording of a webpage

interaction. But an indefiniteness determination does not look at claim terms in isolation. Rather, indefiniteness is be considered in light of the entire intrinsic record (the claims, the specification, and the prosecution history). *See Infinity Computer*, 987 F.3d at 1059. Intuit fails to adequately explain why a POSITA might think that the claim term "recording" includes simply taking a video recording in light of the other language in the claims and the Court's constructions of that claim language – specifically, the claim language explaining that what is sent between the devices is "information related to the shared web browsing interaction" and the Court's claim construction requiring that the synchronized browsing session be fully interactive.

In addition, that the claim term "recording a shared web browsing interaction . . ." is not indefinite is also supported by Intuit's statements during the IPR proceedings. During the IPR proceedings for the '448 Patent, Intuit provided the PTAB with an expert report from Intuit's expert, Dr. Lieberman. *See* ECF. No. 100-1, Ex. D. In that expert report, Dr. Lieberman applied the claim term "recording a shared web browsing interaction . . ." to the prior art references at issue without noting any uncertainty as to the scope of the claim term. *See id.* ¶¶ 161–64 ("Lebrun discloses **recording a shared web browsing interaction**." (emphasis in original)), 233–34 ("Prajapat discloses **recording a shared web browsing interaction**." (emphasis in original)); *see also* ECF No. 100-1, Ex. E at 25–26, 50–51. This is evidence that a POSITA is able to understand the scope of the claim term at issue with reasonable certainty.

The Federal Circuit has explained that application of the term at issue by the challenger's own expert without any uncertainty is "evidence that a skilled artisan d[oes] understand the scope of this invention with reasonable certainty." *Sonix*, 844 F.3d at 1380; *see also Liqwd, Inc. v. L'Oreal USA, Inc.*, 720 F. App'x 623, 631 (Fed. Cir. 2018) ("Evidence of a challenger's own ability to apply a term without unreasonable uncertainty counts against an indefiniteness contention."). Thus, application of the term by Intuit and its expert without issue during the IPR proceedings is evidence that a skilled artisan understands the scope of this invention with reasonable certainty. *See id.*; *see, e.g., Taction*

*Tech. Inc. v. Apple Inc.*, No. 21-CV-812 TWR (JLB), 2022 WL 18781398, at *13 (S.D. Cal. Sept. 28, 2022) ("[A]pplication of the term by Apple and its expert without issue during the IPR proceedings is evidence that a skilled artisan did understand the scope of this invention with reasonable certainty."); *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, No. 3:21-CV-00516-RSH-DDL, 2022 WL 17331255, at *10 (S.D. Cal. Nov. 29, 2022), *aff'd sub nom. DNA Genotek Inc. v. Spectrum Sols. LLC*, No. 2023-2017, 2025 WL 502040 (Fed. Cir. Feb. 14, 2025) (relying on accused infringer and its expert's ability to apply claim term without issue during their invalidity analysis in IPR proceedings in rejecting indefiniteness challenge).

Further, that the claim term "recording a shared web browsing interaction . . ." is not indefinite is also supported by evidence from the prosecution history showing that the examiner was able to apply the claim term without any difficulty. *See* ECF No. 99-3, Ex. 2 at 51, 81. Application of the term at issue by a patent examiner is also "evidence that a skilled artisan did understand the scope of this invention with reasonable certainty." *Sonix*, 844 F.3d at 1380.

In sum, Intuit has failed to demonstrate that the claim term "recording a shared web browsing interaction responsive to determining that a web browsing interaction of the host device within a web browsing window is a sharable web browsing interaction" is indefinite.

F.  The Order of Steps in for "sending a request for webpage content to a website server," "transmitting information related to the shared web browsing interaction to the synchronization server," and "receiving . . . the requested webpage content from the website server"

The parties dispute the proper ordering of certain steps contained in independent claims 1 and 11. In presenting their dispute to the Court, the parties break up the limitations in independent claim 1 in the following manner:

[1.a] sending a request to establish the synchronized browsing session to a synchronization server;

[1.b] receiving a confirmation message from the synchronization server including a session identifier generated by the synchronization server, wherein the session identifier is associated with the host device and the established synchronized browsing session;

[1.c] sending an invitation to an invitee device to join the synchronized browsing session, wherein the invitation includes the session identifier;

[1.d] recording a shared web browsing interaction responsive to determining that a web browsing interaction of the host device within a web browsing window is a sharable web browsing interaction;

[1.e] sending a request for webpage content to a website server independent of the synchronization server;

[1.f] subsequent to sending the request for webpage content to the website server, transmitting information related to the shared web browsing interaction to the synchronization server;

    [1.f.i] wherein the information related to the shared web browsing interaction is to be processed by a browser of the invitee device and enables the invitee device to generate a request to retrieve a substantially the same webpage content as the request for the webpage content from the host device;

    [1.f.ii] wherein the synchronization server transmits the information related to the shared web browsing interaction to the invitee device in response to receiving the information related to the shared web browsing interaction from the host device, and

    [1.f.iii] wherein the invitee device retrieves data from the website server in response to receiving the information related to the shared web browsing interaction from the synchronization server, the data associated with the webpage content requested by the host device and the information related to the shared web browsing interaction;

[1.g] receiving, responsive to sending the request for webpage content to the website server and after transmitting the information related to the shared web browsing interaction to the synchronization server, the requested webpage content from the website server.

ECF No. 99 at 2–3; *see also* ECF No. 99-12 at 8–10.

Here, the parties dispute the proper ordering of steps 1.e, 1.f, and 1.g listed above. Samesurf contends that the "'subsequent to' in limitation [1.f] means that limitation [1.f] is performed after limitation [1.e] is performed [and] [t]he term "after" in limitation [1.g] means that limitation [1.g] is performed after limitation [1.f] is performed." ECF No. 96-1 at 31. Intuit contends that "The three steps recited in limitations 1.e, 1.f, and 1.g must occur in the same order as recited in the claim." ECF No. 99 at 16.

The parties' claim construction dispute can be resolved by examining the claim language at issue. "[A] claim 'requires an ordering of steps when the claim language, as a matter of logic or grammar, requires that the steps be performed in the order written." *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 764 F.3d 1392, 1398–99 (Fed. Cir. 2014); *accord Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1028 (Fed. Cir. 2019).

Limitation 1.e in independent claim 1 of the '448 Patent contains the step of "sending a request for webpage content to a website server independent of the synchronization server." '448 Patent col. 23 ll. 47–48. Limitation 1.f contains the step of "transmitting information related to the shared web browsing interaction to the synchronization server" but also contains claim language explaining that this transmitting step occurs "subsequent to sending the request for webpage content to the website server." *Id.* at col. 23 ll. 49–52. Thus, as a matter of logic and grammar, the claim language requires that the sending step in limitation 1.e must occur before the transmitting step in limitation 1.f.

Limitation 1.g contains the step of "receiving . . . the requested webpage content from the website server." *Id.* at col. 24, ll. 4–8. Limitation 1.g contains additional claim language explaining that this receiving step occurs "after transmitting the information related to the shared web browsing interaction to the synchronization server." *Id.* at col. 2,

ll. 5–7. Thus, as a matter of logic and grammar, the claim language requires that transmitting step in limitation 1.f must occur before the receiving step in limitation 1.g.

At the claim construction hearing, Samesurf conceded that limitation 1.e occurs before 1.f, which occurs before 1.g. But Samesurf argued that the Court's claim construction for this term should not use the word "must" because that would prejudice its potential assertion of infringement under the doctrine of equivalents down the road. The Court rejects Samesurf's argument. The Federal Circuit has approved using the word "must" in claim constructions when the claim language, as a matter of logic or grammar, requires that the steps at issue be performed in the certain order as is the case here. *See, e.g.*, *Amgen*, 923 F.3d at 1028 (affirming district court's claim construction that included the phrase "'must occur'"); *Mformation*, 764 F.3d at 1399 (affirming district court's claim construction that included the word "must"). Further, what effect the Court's claim construction will have on Samesurf's potential doctrine of equivalents contentions is a matter for a latter stage in the case. *Cf. Niazi*, 30 F.4th at 1350 (explaining that claim construction is only the first step of the two-part infringement analysis).

Accordingly, the Court holds that the sending step in limitation 1.e must occur before the transmitting step in limitation 1.f, and the transmitting step in limitation 1.f must occur before the receiving step in limitation 1.g. Further, in presenting their claim construction positions on this issue, both parties recognize that independent claim 11 should be construed consistently with independent claim 1. *See* ECF No. 96-1 at 31–32; ECF No. 99 at 16; ECF No. 100 at 18. Therefore, the Court also holds that the sending step in limitation 11.g must occur before the transmitting step in limitation 11.h and the transmitting step in limitation 11.h must occur before the receiving step in limitation 11.l.

G.    The "wherein" Clauses

The parties agree that the "wherein" clause of claims 1 and 11 "describe the environment in which the host device operates and therefore the 'wherein' clauses are limitations." ECF No. 96-1 at 38; *see* ECF No. 100 at 19; ECF No. 99 at 18; ECF No. 102 at 8; *see also* ECF No. 99-12, Ex. 11 at 24. Accordingly, the Court construes the "wherein"

3:22-cv-00412-RSH-DDL

clauses of independent claims 1 and 11 as "describing the environment in which the host device operates and therefore the 'wherein' clauses are limitations."

H.     "the invitee device retrieves data from the website server"

Samesurf proposes that the claim term "the invitee device retrieves data from the website server" be construed as "the invitee device obtains data from the website server." ECF No. 96-1 at 43. Intuit proposes that this claim term be construed as "the invitee device itself requests and receives data directly from the website server (merely 'receiving' or being 'given' the data is not sufficient)." *Id.*; ECF No. 99 at 18.

Intuit's proposed construction requires that the invitee device itself requests data from the website server and then receives data directly from the website server in response to that request – rather than passively "receiving" or being "given" the website data through another entity such as the synchronization server. ECF No. 99 at 19. Intuit contends that its proposed construction is supported by disclaimers contained in the prosecution history. *See id.*

During the IPR proceedings for the '448 Patent, in an effort to distinguish the invention claimed in the '448 Patent from the prior art references at issue, Samesurf made the following statements.

> While the cited prior art depends on the middleman server to receive the webpage, the '448 Patent claims require that **the guest device must "access the web server independent of the synchronization server."** In fact, it is this independent access requirement of the '448 Patent that is at least partially responsible for the performance and security improvements that it achieves over the embodiments from Petitioner's prior art references. Specifically, the '448 Patent describes in relation to Fig. 5(a) that
>
> > "website request 65 [from guest device 14] is identical to website request 60 [from host device 10] such that website content reply 67 [to the guest device], the data content sent by website server 12 in response

to website request 65, is similar or identical to website content reply 66 [to the host device].”

ECF No. 99-4, Ex. 3 at 23 (emphasis added) (citations omitted) (quoting ’448 Patent claim 1, col. 16 ll. 60-64). “**The guest device** . . . utilizes the information related to the shared web browsing interaction to **access the website server on its own (step 602) (i.e. without the mediation of a “middleman” server)** in order to retrieve the desired content (step 603).” *Id.* at 21–22 (emphasis added); *see also id.* at 13 (“The guest device uses the information related to the shared web browsing interaction to directly, and on its own, interact with the website server (elements [1.f.i] and [1.f.iii]) in the same manner as the host device . . . .”); ECF No. 99-6, Ex. 5 at 1 (“In the ’448 Patent claims, the . . . ‘synchronized browsing session’ . . . allow[s] **the invitee device to make its own request to the web server to thereby independently replicate the host’s web browsing interactions in real time**.” (emphasis added)).

During the IPR proceedings, Samesurf distinguished the Lebrun prior art reference on the grounds that: “[T]he ’448 Patent’s specification and claims make it clear that **the guest device** utilizes the information related to the shared web browsing interaction received from the synchronization server to ‘**retrieve[] data from the website server’ without mediation from the synchronization server**.” *Id.* at 50 (emphasis added). Samesurf distinguished the Prajapat prior art reference on the grounds that: “‘synchronized browsing,’ as described and claimed in the ’448 Patent, requires that the **guest device itself ‘retrieves data from the website server’ (i.e. to independently access content from a website server), rather than employing a middleman server** (i.e. the web media servers 14) to retrieve the data.” *Id.* at 64–65 (emphasis added); *see also* ECF No. 99-5, Ex. 4 at 5 (“Like Lebrun, Prajapat’s configuration is distinctly different from the ’448 Patent, in which both the host and **invitee devices independently access the website server** as opposed to a ‘middleman’ server accessing the webpage.” (emphasis added)).

Because Samesurf made these clear and unequivocal statements in an effort to distinguish its invention from the prior art at issue during the IPR proceedings, these

statements represent a clear and unmistakable prosecution disclaimer requiring that the invitee/guest device retrieve data from the website server independent of a "middleman" server, such as the synchronization server. *See Traxcell*, 15 F.4th at 1141 (""[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well.'"); *Computer Docking Station*, 519 F.3d at 1374; *MBO Lab'ys*, 474 F.3d at 1330. Therefore, the Court's construction for the claim "the invitee device retrieves data from the website server" will include the requirement that the invitee/guest device retrieve data from the website server independent of a "middleman" server, such as the synchronization server.[10]

Samesurf criticizes Intuit's proposed construction because it uses the "word 'directly,' which carries with it the meaning that the action is performed 'without anything else being involved or in between.'" ECF No. 100 at 21. Samesurf contends that a POSITA would not have understood the limitation to require a "direct" communication between devices, at least because the communication would necessarily involve some other intervening devices. *Id.* (citing ECF No. 100-1, Friedman Decl. ¶¶ 173–74). The Court agrees in part with Samesurf's contention. Intuit's proposed construction for this claim is too broad. Even when there is a clear and unmistakable prosecution disclaimer, "the court must construe the claim 'congruent with the scope of the surrender.'" *Cordis*, 511 F.3d at 1177. The disclaimers contained in the prosecution history do not prohibit the invitee device from utilizing any intervening device to retrieve data from the website server. However, the disclaimers do specifically prohibit the invitee device from utilizing a middleman server like the synchronization server to retrieve data from the website server.

---

[10]     For this claim term, Samesurf contends that there was no prosecution disclaimer and raises many of the same arguments that it made with respect to the claim term "invitee device." In construing the term "invitee device," the Court rejected all of these arguments by Samesurf. *See* Order at Section III.B. Therefore, the Court rejects these arguments with respect to this claim term for the same reasons.

Therefore, the Court will adopt a construction for this claim term that includes that disclaimer.

In sum, the Court adopts a modified version of Intuit's proposed construction for this claim term. Accordingly, the Court construes the claim term "the invitee device retrieves data from the website server" as "the invitee device requests and receives data from the website server independently without mediation from the synchronization server."

I.    The Preamble of Claim 1[11]

The parties dispute whether the preamble of independent claim 1 is fully limiting or only partially limiting. Intuit contends that the entire preamble of claim 1 is limiting. ECF No. 99 at 20-21. In contrast, Samesurf contends that the preamble is limiting only to the extent that it provides antecedent basis for other terms that appear in the claim, such as "host device" "invitee device," and "synchronized browsing session." ECF No. 100 at 21.

---

[11]    Samesurf objects to the inclusion of this claim term and the following claim on the grounds that it exceeds the number of permissible claim terms for the Court to construe under Patent Local Rule 4.2(a). ECF No. 100 at 21, 22; *see also* Doc. No. 96-3 at 5 n. 5–6. Patent Local Rule 4.2(a) sets forth the "maximum" number of claim terms that the parties can identify in their Joint Hearing Statement.

Nevertheless, "[t]his Court has discretion to modify the requirements set forth in the Patent Local Rules." *Am. GNC Corp. v. LG Elecs., Inc.*, No. 17-CV-01090-BAS-BLM, 2018 WL 400346, at *8 (S.D. Cal. Jan. 12, 2018). "Patent Local Rule 1.3 specifically provides that 'the court may . . . modify the obligations . . . set forth in these Patent Local Rules based on the court's schedule or the circumstances of any particular case, including, without limitation, the complexity of the case or the number of patents, claims, products, or parties involved." *Id.* (quoting S.D. Cal. Pat. L.R. 1.3). "The Rule provides the Court with substantial discretion in faithfully discharging its duties in a patent litigation." *Id.*

Here, Intuit's Opening Claim Construction Brief complies with the page limits set forth in Patent Local Rule 4.4, and the brief does not exceed 10 disputed claim term for construction. *See generally* ECF No. 99. In light of this, the Court, exercising its substantial discretion, overrules Samesurf's objection to the amount of claim terms presented in Intuit's Opening Claim Construction Brief.

"In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). "Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" *Id.* (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)); *accord Arctic Cat Inc. v. GEP Power Prod., Inc.*, 919 F.3d 1320, 1328 (Fed. Cir. 2019). The Federal Circuit has explained that "the rule against giving invention-defining effect to intended-use preamble language reflects a longstanding substantive aspect of the patent statute—specifically, the 'well settled' fundamental principle 'that the recitation of a new intended use for an old product does not make a claim to that old product patentable.'" *Arctic Cat*, 919 F.3d at 1328; *see also Catalina*, 289 F.3d at 809 ("[P]reambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure.").

"Whether to treat a preamble as a limitation is a determination 'resolved only on review of the entire[] . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.'" *Catalina*, 289 F.3d at 808 (quoting *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)). "No litmus test defines when a preamble limits claim scope," but the Federal Circuit has recognized certain "guideposts" for making that determination. *Id.*

One of those guideposts is that: "When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003); *accord Pacing*, 778 F.3d at 1024; *see In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019) ("We have repeatedly held a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim."). This guidepost is present

here. The claim terms "host device," "invitee device," and "synchronized browsing session" in the preamble of claim 1 provide the antecedent basis for those claims terms contained in the body of claim 1. *See* '448 Patent col. 23 ll. 30-42 ("[a] method performed by a host device for establishing a synchronized browsing session between the host device and an invitee device . . .").

In light of this, Samesurf concedes that the preamble of claim is limiting as to the specific terms "host device," "invitee device," and "synchronized browsing session." ECF No. 100 at 21. But Samesurf contends that the rest of the preamble is not limiting. *See id.* at 21–22. The Federal Circuit's decision in *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020), is instructive on this point. In *Bio-Rad*, the preamble at issue recited "'[a] method for conducting a reaction in plugs in a microfluidic system.'" *Id.* at 1370. The terms "reaction" and "microfluidic systems" in the preamble provided antecedent basis for the use of those terms in the body of the claim. *Id.* In light of this, the Federal Circuit found the entire preamble limiting. *See id.* at 1370–72. The Federal Circuit explained: "The language relied upon for antecedent basis in the preamble at issue is intertwined with the rest of the preamble." *Id.* at 1371. Thus, "[t]he fact that the terms 'reaction' and 'microfluidic systems' provide antecedent basis for these terms in the body of the claim is a strong indication that the preamble acts 'as a necessary component of the claimed invention.'" *Id.* (quoting *Eaton*, 323 F.3d at 1339). Similarly, here, the terms "host device," "invitee device," and "synchronized browsing session" are intertwined with the overall broader phrase of "[a] method performed by a host device for establishing a synchronized browsing session between the host device and an invitee device" contained in the preamble of claim 1. '448 Patent col. 23 ll. 30-42. As such, under the Federal Circuit's decision in *Bio-Rad*, the fact that the terms "host device," "invitee device," and "synchronized browsing session" provide antecedent basis for those terms in the body of claim 1 "is a strong indication that the preamble acts 'as a necessary component of the

claimed invention.'"[12] *Bio-Rad*, 967 F.3d at 1371; *see, e.g.*, *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1372–73 (Fed. Cir. 2014) (finding entire preamble limiting where preamble contained claim term that provided antecedent basis for a term in the body of the claim); *DNA Genotek*, 2022 WL 17331255, at *31 (same). As such, the Court finds that the preamble of claim 1 is limiting.

In sum, the Court adopts Intuit's claim construction position and rejects Samesurf's claim construction position regarding the preamble of claim 1. Accordingly, the Court construes the entire preamble of independent claim 1 as limiting.

J.    <u>"sending an invitation to an invitee device to join the synchronized browsing session"</u>

Samesurf contends that the claim term "sending an invitation to an invitee device to join the synchronized browsing session" need not be construed, and instead the term should be given its plain and ordinary meaning. ECF No. 96-1 at 52. Intuit proposes that the claim term be construed as "send[ing] an invitation from the host device to [an/the] invitee device directly and without mediation by the synchronization server or independent action by the invitee device." *Id.*; ECF No. 99 at 23.

Intuit's proposed construction requires that the invitation be sent directly from the host device to the invitee device without any mediation by the server (i.e., without the server acting as middleman). *See* ECF No. 99 at 23–25. Intuit argues that its proposed construction is supported by disclaimers made by Samesurf during the IPR proceedings. *See id.* The Court disagrees.

---

[12] Samesurf contends that "a non-limiting preamble can provide antecedent basis for claims terms." ECF No. 100 at 22. To support this argument, Samesurf cites to the district court decision *Rockwell Automation, Inc. v. 3-S Smart Software Solutions, GmbH*, No. 2:15-cv-1543, 2016 U.S. Dist. LEXIS 138209, at *148 (E.D. Tex. Oct. 5, 2016). The Court does not find Samesurf's reliance on *Rockwell Automation* persuasive. *Rockwell Automation* is a non-binding district court decision that was issued prior to the Federal Circuit's precedential opinion in *Bio-Rad*.

"For a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'" *Genuine Enabling*, 29 F.4th at 1374. During the IPR proceedings, in its Patent Owner Response, Samesurf stated: "According to claim 1, the 'host device' is the device that . . . 'send[s] an invitation to an invitee device to join the synchronized browsing session.'" ECF No. 99-5, Ex. 4 at 14 (citing '448 patent col. 23, ll. 40–42). Samesurf then went on to distinguish the invention claimed in the '448 Patent from the prior art references at issue on the grounds that the prior art references do not send an invitation from the host device to an invitee device. *See id.* at 40–42, 72–73, 76.

Intuit contends that Samesurf distinguished the '448 Patent from the prior art references at issue on grounds that the prior art systems send the invitation to an intermediary server rather than directly to the invitee device. *See* ECF No. 99 at 23–24; ECF No. 102 at 9–10. But a review of Samesurf's Sur-Reply in the IPR proceedings shows that this is not correct. In the Sur-Reply, Samesurf contends that the reason why the prior art references do not satisfy the invitation limitation is not simply because the prior art systems have the host device send the invitation to a "middleman" server. It is because, according to Samesurf, the middleman server never then forwards the invitation itself to the invitee device. *See* ECF No. 99-6 at 12 ("Lebrun does not describe forwarding the 'session-creation message' to the invitee . . . . With regard to Wang, Figure 3 illustrates that the invitation message is sent to the 'server apparatus.' However, only an acknowledgement or notice of the invitation (not the invitation itself) is sent by the 'server apparatus' to the invitee device."). And Samesurf argued on that basis that the prior art systems lacked a host device that sends an invitation to an invitee device as required by the '448 Patent's claim language. *See id.* at 11–13. As such, Intuit has failed to show a clear and unmistakable prosecution disclaimer by Samesurf that would support Intuit's proposed construction for this claim term.

In sum, the Court rejects Intuit's proposed construction for this claim term. Accordingly, the Court gives the claim term "sending an invitation to an invitee device to

join the synchronized browsing session" its plain and ordinary meaning, and the Court declines to further construe the claim term.

## IV.     CONCLUSION

The Court construes the claims as stated in this Order.

**IT IS SO ORDERED**.

Dated:  May 2, 2025

_Robert S Huie_
_____
Hon. Robert S. Huie
United States District Judge